THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENJAMIN RUTMAN, Appellant.

Second Department, December 23, 1940.

*Benedict S. Rosenfeld,* for the appellant.

*Edmund C. Rowan, Assistant District Attorney [Charles P. Sullivan, District Attorney],* for the respondent.

JOHNSTON, J. Defendant was indicted jointly with one Murray E. Kaplan and charged with the crimes of forgery in the second and third degrees, petit larceny and conspiracy. The indictment contains sixteen counts. Six counts charge the commission of forgeries on August 22, 1934, and eight charge the commission of forgeries on February 19, February 25, March 7, and July 27, 1936. The fifteenth count charges the defendant and Kaplan with petit larceny committed between February 25 and March 7, 1936. The sixteenth count charges that the defendant and Kaplan, acting in concert with each other and with one Irving Shaw, " on, about or between February 19th, 1936, and July 27th, 1936, * * * conspired * * * to commit the crimes of FORGERY and PETIT LARCENY, alleged and set forth in the preceding 7th, 8th, 9th, 10th, 11th, 12th, 13th and 14th counts hereof and the crime of PETIT LARCENY mentioned and referred to in the 15th count hereof, all as acts or transactions connected together and/or constituting parts of a common scheme or plan." During the trial Kaplan pleaded guilty to forgery in the third degree and testified

as a witness for the People. The court dismissed the petit larceny count and defendant was found guilty on the remaining fifteen counts.

The offenses charged in the first fourteen counts are based upon forgeries alleged to have been committed by defendant while an assistant manager of the Metropolitan Life Insurance Company at its Far Rockaway office, whereby defendant appropriated the cash surrender value or the like, of certain lapsed policies held by one Addie Wilson and which she understood to be worthless.

The general scheme followed by defendant in obtaining the proceeds on those lapsed policies is substantially as follows: Under defendant's supervision as assistant manager were a number of agents, including Kaplan, whom he assigned to particular debits or territories. The agents visited these territories and collected weekly premiums, sought new business and handled other insurance matters. Occasionally there would come to light the fact that a dormant or lapsed policy existed which the policyholder did not suspect had any value. The holder of such policy, upon which payments had not been made for at least five years, may obtain a refund upon surrendering it or he may borrow on the policy by submitting to the company an application showing that he is " in dire need." When defendant learned of the existence of such a policy he would obtain it from the policyholder, stating that he would try to secure some refund on it from the company. He would then forge the policyholder's name on an application for the surrender value or on an application made on the ground of " dire need," as the case might be, and note on the application a fictitious address, to which the check was to be sent by the company. In other words, the check was not to be sent to the policyholder's correct address, but in care of a person with whom defendant had previously arranged to obtain the letter containing the check. When the check was thus obtained, defendant would sign the policyholder's name on the back of the check and cause it to be cashed, not on his own indorsement, but upon his oral representation that the forged indorsement was in fact that of the payee. Obviously this resulted not only in defrauding the policyholder but also the company.

The People established that defendant, in furtherance of his scheme to obtain the proceeds on the Wilson policies, forged Mrs. Wilson's name to the several documents, as charged in the indictment. While defendant denied participation in the fraudulent scheme, particularly in the Wilson transaction, the proof of his guilt is overwhelming; his denial of the forgery of the various documents and his participation in the scheme is palpably false and the judgment must be affirmed unless, as defendant contends, the court committed reversible error.

When defendant's counsel, on his cross-examination of the People's witnesses, indicated that the defense was that defendant throughout the entire transaction had acted innocently and without evil intent, the People, on the direct case, were permitted, over appropriate objections and exceptions, to offer proof of similar offenses committed by defendant with respect to policies of other policyholders. It will be unnecessary to review the evidence of which defendant complains. Suffice to say it shows that defendant resorted to the same practices with regard to the Saslawsky, Blake, Conniff and Barone policies, and this proof referred to acts subsequent to the Wilson transactions alleged in the indictment.

It is an elementary rule that a person charged with a particular offense may not be convicted upon proof that he committed another crime. (*People* v. *Grutz*, 212 N. Y. 72, 76; *People* v. *Katz*, 209 id. 311; *People* v. *Dolan*, 186 id. 4; *People* v. *Molineux*, 168 id. 264, 292; *People* v. *Shea*, 147 id. 78.) There are, however, certain recognized exceptions to this general rule which cannot be scientifically classified or enumerated. As stated in *People* v. *Molineux* (*supra*, 293), evidence of other crimes is usually competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial. Such proof is not received for the purpose of showing other crimes not charged in the indictment, but solely for the purpose of showing guilty knowledge and intent, which are essential elements of the crime charged.

· In *People* v. *Everhardt* (104 N. Y. 591) the defendant was charged with uttering a forged check knowing it to be forged. The People had no direct or positive evidence that defendant personally forged the check which he uttered. It was held that proof that the defendant committed other forgeries was competent, not for the purpose of showing other crimes but for the purpose of showing guilty knowledge and intent, which were elements of the crime charged.

In *People* v. *Dolan* (*supra*) defendant was indicted for forging the name of Thos. Cockerill & Son as the makers of a promissory note and uttering the same, knowing it to be forged. For the purpose of showing guilty knowledge on the part of the defendant, the prosecution proved the uttering by him of two other forged notes signed with the same name, two more forged notes signed with the name James Stewart & Co., and a fifth bearing the name of Patrick Gallagher. It was held that the evidence as to all the notes was competent to establish a common plan and identity

of method so connected as to have a strong tendency to overcome any claim of innocent intent in the uttering of the note mentioned in the indictment.

It is true that in the cases just referred to the other offenses as to which proof was admitted all antedated the crime charged, while in the instant case the proof related to offenses committed subsequent to the crime charged. But it is immaterial whether the collateral acts occurred before or after the time of the crime charged. (*People* v. *Marrin*, 205 N. Y. 275; *People* v. *Shulman*, 76 id. 624; Underhill on Criminal Evidence [2d ed.], § 89; Wharton's Criminal Evidence [10th ed.], § 39; Chamberlayne's Trial Evidence [2d ed.], § 687, p. 655.)

In *People* v. *Marrin* (*supra*) defendant was charged with violating section 885 of the Penal Law, in that as a commissioner of deeds he " wilfully certified falsely " that a certain mortgage was duly acknowledged before him by a person purporting to be the mortgagor. It appeared that no person of the name of the alleged mortgagor had ever been connected with the title to the mortgaged premises; that there was a false certificate of record indorsed on the mortgage; that the mortgage purported to cover adjoining halves of two city lots and that defendant embezzled the moneys purporting to be secured by the mortgage, but from time to time paid the mortgagee the interest thereon. The People, solely for the purpose of showing that no person of that name had acknowledged the instrument, and that if any person had, the defendant knew it was not the person described therein, and that the transaction was part of a continuous scheme to defraud the mortgagee, offered eight similar mortgages to the same mortgagee, acknowledged by the defendant, purporting to be made by different mortgagors. The mortgages were received in evidence. Six of the eight mortgages were dated prior and two subsequent to the mortgage which was the subject of the indictment. The court held that the People had the right, on the direct case, to prove similar acts done under similar circumstances at about the same time, with intent to defraud the same person by the same means, and that the common method, purpose and victim formed the connecting links which strung together the nine successive and successful efforts to defraud pursuant to a common scheme; and that the evidence was competent to show knowledge, intent and absence of mistake.

In *Shulman* v. *People* (14 Hun, 516) the plaintiffs in error were charged with procuring goods in January, 1876, upon false pretenses contained in a written statement made by them in regard to their pecuniary condition. For the purpose of showing the prisoners'

knowledge of the falsity of the written statement, the prosecution was allowed to show statements made by them in the month of March following, in regard to their then responsibility. The General Term, in reversing the judgment of conviction, held this was error; that the evidence was too remote to be admitted for the purpose of showing that they knew that the written statement was false when it was made. The Court of Appeals affirmed the judgment of the General Term, although a majority of the court did not concur in any opinion. (*People* v. *Shulman*, 76 N. Y. 624.) Judge EARL, with whom Judge FOLGER and Judge MILLER concurred, read an opinion for reversal of the judgment of the General Term. Judge DANFORTH, with whom Chief Judge CHURCH concurred, read an opinion for affirmance. Judge RAPALLO and Judge ANDREWS were also for affirmance, without dissenting from all that was said by Judge EARL. Neither opinion was published.

In *Mayer* v. *People* (80 N. Y. 364) it is stated that the authorities relating to the admission of evidence of other offenses, as bearing upon the question of intent, were examined in the *Shulman* case and are considered in the opinion of Judge EARL in that case. It is further stated that, although in the *Shulman* case there was a difference of opinion, the difference related to the details of the evidence admitted rather than to the general principle involved, but on the main proposition discussed in the opinion of Judge EARL there was no material disagreement. That portion of Judge EARL's opinion referred to as concurred in by the court is printed (p. 373) as a note in the opinion of Judge RAPALLO, who wrote in *Mayer* v. *People* (*supra*). Judge EARL, after discussing the cases in this and other jurisdictions dealing with the subject, states: " As will be seen by an examination of the cases above cited, and by a consideration of the principles which underlie them, it can make no difference whether the transaction sought to be proved, to throw light upon the main issue, occurred before or after the time of the alleged crime. They may be more significant in the one case than in the other, but in either case they reflect light upon the main transaction. Upon the trial of an indictment for passing counterfeit money, where the question to be determined is the guilty knowledge of the prisoner, it has some bearing upon that question that he continued to deal in the same kind of money; and the evidence of such dealing is of the same nature, and, so far as I can perceive of the same value, as evidence of prior dealing. So when a person is charged with procuring property by false pretences, and the question is as to his knowledge, motive, or intent, evidence that soon after, and from time to time afterwards, he continued to obtain property from others in the same way and for

the same fraudulent purpose, obviously reflects light upon that question. Such evidence has a direct tendency to show the mind with which he obtained the goods at the prior date."

Defendant claims that even if the evidence were otherwise competent, the subsequent forgeries were so remote in time that it was error to permit the People to show them. But the length of time that transpired between the commission of the crime charged and the subsequent offenses merely goes to the weight of the evidence and not to its admissibility. (*Holt* v. *United States*, 42 F. [2d] 103.) In the final analysis, each case is to be judged upon its own circumstances, and ordinarily the determination of whether the evidence of the collateral acts is too remote rests in the discretion of the trial court. (*People* v. *Shulman, supra;* 2 Wigmore on Evidence [3d ed.], § 316.) In the instant case it cannot be said that the subsequent offenses were too remote. The date of the checks involved in the crime charged is February 25, 1936, while the dates of those involved in the other transactions run from June 19, 1936, to November 26, 1937.

The proof of the other forgeries committed subsequent to the forgeries charged in the indictment, under the circumstances disclosed by this record, was competent to show defendant's criminal intent and also the common scheme or general design. The other transactions were so connected and related to each other and to the crime charged in the indictment as to show a common intent running through all of them. It also should be stated that the learned county judge correctly charged how the evidence of the collateral acts was to be considered by the jury.

The cases relied upon by defendant are readily distinguished. In *People* v. *Montana* (252 App. Div. 109) the defendant was indicted for the crime of knowingly receiving money for procuring and placing a woman in the custody of another for immoral purposes. Upon the trial the People were permitted to establish as part of their direct proof that the defendant was guilty of over two hundred separate and distinct violations of the statute involved, all of which were subsequent in point of time to the crime charged. The court, in reversing the judgment of conviction, held that the proof of the subsequent offenses was improperly received. In holding this testimony inadmissible the court stated that such proof was unnecessary to establish either motive or intent on the part of the defendant in the alleged commission of the offense with which he was charged. As the court stated (p. 113): " If the defendant committed the acts charged, it would be quite clear that in so doing he would not only have an evil motive, but, in addition thereto, a willful intent. The motive would be to obtain ill-gotten money; the intent would

be inferred from the very nature of the act." It is significant that the court expressly recognized the rule that in certain cases, such as forgery, "it is proper, and even necessary, to establish a criminal intent by proving other offenses."

In *People* v. *Horie* (258 App. Div. 246), also cited by defendant, the information charged the appellants with unlawfully and willfully injuring property belonging to a taxicab corporation, in violation of section 1433 of the Penal Law. Upon the trial one Hann, a witness for the People, testified concerning a conference about three months after the commission of the crime charged, at which Horie, referring to a controversy with another company, had stated: "We will go out and burn up some of their cabs." The witness also was permitted to testify that another defendant was in possession of emery powder on another occasion in no way connected with and ten months after the commission of the crime charged in the information. The court, in reversing the judgment of conviction, held this testimony inadmissible because there was "no evidence to suggest that the crime charged against the appellants was part of a general scheme of sabotage which included the extraneous matters to which Hann testified, and, therefore, proof of these subsequent occurrences was erroneously received."

We have examined the other questions raised by the appellant and find nothing which would justify reversal of the judgment. It follows, therefore, that the judgment of conviction should be affirmed.

Present — LAZANSKY, P. J., JOHNSTON, ADEL, TAYLOR and CLOSE, JJ.

Judgment of the County Court of Queens County convicting defendant of the crimes of forgery in the second and third degrees, and conspiracy, unanimously affirmed.