Nanette Dembitz, J.
The major issue in this juvenile delinquency proceeding against a 13-year-old hoy is the requirement of the Penal Law that no one shall he convicted of rape ‘ ‘ solely on the uncorroborated testimony of the alleged victim.” (Penal Law, § 130.15).
The illogic of the rules on corroboration of a rape victim’s testimony was emphasized in 1967 — shortly after their re-enactment in the new Penal Law — in opinions by 5 of the 7 Judges of the Court of Appeals (People v. Radunovic, 21 N Y 2d 186). One of the criticisms therein of the corroboration requirement was its implicit deprecation of the credibility of a female victim of a crime compared with a male (p. 194). The proceeding at bar is yet another example of testimony by a female victim, of such a convincing caliber that it establishes guilt beyond a reasonable doubt even without corroboration as to the rapist’s identity (the element of proof most difficult to corroborate). Here the victim had ample opportunity to observe her assailant; her testimony was free of any suggestion of vindictiveness to respondent, who was a complete stranger to her; and all the details of her testimony as well as her manner attested to her credibility.
However, the call for legislative amendment[1] of the corroboration requirement unfortunately is still unanswered, and the *1045 testimony of the victim, no matter how reliable, continues to be insufficient in a sex-crime or sex-delinquency case. The clear and unequivocal statutory mandate undoubtedly must be given the same effect in a juvenile delinquency proceeding as in a criminal proceeding against an adult. (Matter of Robert M., 37 A D 2d 527 [1st Dept.]; Matter of Byron D., 36 A D 2d 742 [2d Dept.].)
The case at bar involves allegations of sexual assaults against three victims. The Corporation Counsel argues that corroboration of each victim’s identification of the rapist is supplied by evidence that the respondent’s acts against all the victims were part of a common scheme or plan. Preliminary to consideration of this legal and factual issue, the consolidation for trial of the three petitions charging similar acts against respondent, will be reviewed.
CONSOLIDATION OF PETITIONS AGAINST EESPONDENT
Three separate petitions, two alleging acts that would constitute rape if committed by an adult and one alleging an act that would constitute sexual abuse, were consolidated for trial over the objection of respondent’s counsel. Though each petition involved a different alleged victim, the three incidents allegedly occurred within a ten-day period, within two adjacent apartment-house developments, and in a similar manner.
In moving for consolidation, the Corporation Counsel explained that he intended to offer each victim’s identification of respondent to corroborate each other’s, on the ground that the acts against the three victims were all parts of a common scheme or plan. Accordingly, the CPLB., which under section 165 of the Family Court Act applies to Family Court proceedings when appropriate, authorized the consolidation of the petitions. For, a “ common question of law or fact ” — that is, whether respondent’s identity could legally be, and was in fact, corroborated in the fashion claimed by Corporation Counsel— arose under all three petitions (see CPLB, 602, subd. [a]).
Further, the consolidation was authorized by section 279 of the Code of Criminal Procedure (which was in effect at the time of the consolidation; its principles were continued in CPL 200.20, subds. 2, 4 effective September 1, 1971). Section 279 permitted the consolidation of two or more indictments or informations charging crimes “ constituting parts of a common scheme or plan, or * * * crimes of the same or a similar character.”[2] "While the code was not applicable in its entirety *1046 to Family Court proceedings (Matter of Daniel Richard D., 27 N Y 2d 90, 95), on questions ,so uniquely related to the administration of the criminal law as those here in issue, rules of criminal procedure seemingly should govern.
Undoubtedly the consolidation was and is proper from a criminal procedure standpoint. See People v. Lombardi (20 N Y 2d 266, 269, 273) where the court upheld the joinder in one indictment of three charges of rape, each of a different victim and at a different time and place, but all allegedly accomplished in a similar manner. Respondent’s attorney argues that the presentation of three similar charges simultaneously against a respondent tends to his prejudice in the determination of the truth of each charge. Obviously however, the Legislature believed that prejudice could be prevented and each charge could be fairly considered on its own merits, despite a joinder or a consolidation, even in a jury case — there by proper instruction (see p. 273). Certainly in a Judge-trial, which is the form of trial in the Family Court, there is even less danger of prejudice.[3] Further, the Corporation Counsel’s contention as to corroboration had sufficient merit on the face of the petitions to require the court to permit him an opportunity to establish it. Since the evidence in support of each petition would therefore be admissible in the trial of each other, separate trials would not dispel the alleged possibility of prejudice, and “ as a practical matter, there would be little point in separating the issues ” (People v. Munger, 24 N Y 2d 445, 449).
FACTS
The evidence showed that respondent’s acts against Virginia, age 14, took place on a Friday afternoon at about 4 p.m., in an apartment building of a group forming a four-block apartment development; against Elizabeth, age 11, the following day at about 7:15 p.m., in a similar building in a similar and adjacent apartment development; and against Rachel, age 14, nine days later at about 6 :30 p.m., in a similar apartment building in the latter development.[4] The three buildings each had a locked exterior door which could only be opened by a key or through the 1 ‘ buzzer ’ ’ system from one of the apartments in the building.
*1047 Virginia called her mother on the house-phone, her mother buzzed the front door open, and respondent pushed through the door after her; Elizabeth called a friend’s mother on the house-phone who buzzed the door open, and Elizabeth held it open for respondent who was right behind her; Rachel opened the front door with a key and respondent followed her in as she was attempting to close the door. In all three cases respondent followed the victim onto the self-service elevator; after the victim pushed the button for a lower floor, he put his left arm around her throat with his hand over her mouth, held an open knife in his right hand with its point about 5 inches from her chest, and told her that if she kept quiet she would not be hurt; when the elevator got to the top floor, he motioned her out of the elevator and up the stairway to the roof landing; then told her to undress completely and when she hesitated participated in the undressing. He laid all of her clothes on the window ledge, as well as the back brace worn by Elizabeth and the musical instruments carried by Virginia and Rachel.
Virginia’s mother — the only mother who had buzzed for her daughter to enter and who was aware of the delay between her entrance into the building and arrival at home — came running up to the roof landing while Virginia still was standing up and still wearing her shoes and socks, though otherwise naked. With Elizabeth and Rachel, respondent told each to lie down on the roof landing; he remained fully clothed except for his protruding penis; he kept his watch and knife on the floor beside the girl, lay on top of the girl keeping his penis in the girl’s vagina for about 15 minutes and after a few minutes again inserting his penis for about 15 minutes; then ordered the girl to dress, and after she dressed walked part way down the stairs with her, warning her not to tell anyone about the incident. The mother of each girl testified as to her daughter’s state of fear and shock or hysteria after the incident, and in Elizabeth’s and Rachel’s cases of their ‘1 fresh outcry ” as to rape and of their bleeding in the vaginal area (a physician who examined Elizabeth shortly thereafter also testified as to her bleeding and injury).
To this court, observing the demeanor of the victims and their mothers as they underwent lengthy direct and cross-examination, each witness appeared to abstain scrupulously from exaggeration, contrivance, or false accusation. For example, the only person in a position to corroborate the victims’ testimony as to respondent’s identity — Virginia’s, mother-testified that she was too alarmed and that her daughter’s *1048 assailant ran by her too quickly, for her to be able to identify him with certainty; and each mother had instructed her daughter that she must be absolutely sure that respondent was the assailant before identifying him. As noted above, there appeared to be no excitability or vindictiveness against respondent, who was a complete stranger to these victims. Thus, the reason underlying* the requirement of corroboration for sex crimes — the likelihood of emotions productive of false accusations — is absent. The court finds that the testimony elicited in support of the petitions, and in particular the testimony of each victim that respondent was her assailant, each having ample opportunity to observe him, was wholly convincing. (No testimony was presented by or for respondent.)
Nevertheless, regardless of the convincing* evidence, sufficient in any other type of case to establish guilt beyond a reasonable doubt, the question is whether the much-criticized requirement of corroboration is satisfied herein. While the maternal and medical testimony corroborates Elizabeth’s and Rachel’s testimony as to coercion and penetration, the only direct identification testimony is — as is usually the case — that of the victims.
CORROBORATION BY EVIDENCE OF SIMILAR CRIMES
Evidence that a defendant has committed crimes similar to the crime charged against him is undoubtedly admissible if “ the modus opercmdi was sufficiently unique * * * to bear on the issue of identity ’ ’ (People v. Kennedy, 27 N Y 2d 551, 553). (In Kennedy the court admitted the testimony of two women that defendant had some months before the charged fraud committed similar frauds against them.) While other crimes cannot be proved 1 ‘ merely to establish that the defendant has a propensity to commit crimes * * * we can envision crimes so unique that the mere proof that the defendant had committed a similar act would be highly probative of the fact that he committed the one charged ” (People v. Condon, 26 N Y 2d 139, 143-144).[5]
In applying this general doctrine, similar crimes have been used to corroborate the identity of a defendant charged with first degree rape. In People v. Chumley (24 A D 2d 805 [3d Dept.]), where the defendant was so charged, the court held: *1049 ‘‘ The identification of defendant by the victim was also strongly supported by other evidence. The corroborative factors included defendant’s * * * employment, upon stopping his car' to accost young girls on occasions before and after the crime, of the same subterfuges used to entice the complaining witness into his automobile ”. See, also, Dorsey v. State (204 Ga. 345, 350 [1948]). There the court held that evidence of rapes subsequent to the charged rape was “ admissible as an aid in identification ” of the defendant if the modus operandi in all the rapes was ‘1 singular ’ ’; and it reasoned that the perpetrator’s method was sufficiently distinctive to establish the relevance of the subsequent crimes in that the rapist in each case lay in wait for his victim on a street either in early morning or late evening, threatened her either with death by a knife or by shooting, and forced her behind a building to accomplish the rape.[6]
In the case at bar, there was a dissimilarity in the three crimes in that respondent was alone in one case and with a different companion on each of the other two occasions. However, respondent took the same role in each incident (with his respective companions observing him in the latter two). Certainly a reasonable person would suspect that the male who acted against one girl was the male who acted against the others; the method of operation in each case was sufficiently similar and distinctive to establish a likelihood that the same individual committed the acts against the three girls. The question is whether that likelihood is sufficiently strong so that the identification of the malefactor by Virginia and Elizabeth can serve as corroboration of Rachel’s identification of the rapist and whether Virginia and Rachel’s identification of respondent can serve as corroboration of Elizabeth’s.
‘ ‘ Circumstantial evidence of corroboration is sufficient if it affords proof of circumstances legitimately tending to show the existence of the material facts of the crime.” (People v. Bravender, 35 A D 2d 1035 [3d Dept.]; italics added). And where corroboration of identification was, as it is here, the issue the court said: “ Corroborative evidence * * * must be of *1050 such a character and quality as tends to prove the guilt of the accused by connecting him with the crime.” (Matter of Robert M., 37 A D 2d 527 [1st Dept.]). The likelihood that the same person perpetrated the acts against each of the three girls tends to prove respondent’s connection with each crime and thus affords sufficient corroboration of each victim’s identification of respondent. Compare as to sufficiency of corroborative evidence, People v. Masse (5 N Y 2d 217); People v. Deitsch (237 N. Y. 300); People v. Marshall (5 A D 2d 352 [3d Dept.]).
The court concludes that the allegations of the petitions filed by the mothers of Elizabeth ■ and Rachel respecting the acts against their daughters are established in accordance with all criminal law standards and requirements.
EVIDENCE OE OTHER CRIMES
The petition on which Virginia was the complaining witness charged acts constituting, if committed by an adult, the crime of sexual abuse in the second degree (Penal Law, § 130.60), which, like rape, requires corroboration of the testimony of the victim (Penal Law, § 130.15). However, Virginia’s testimony did not support this allegation, since respondent did not subject her to “sexual contact” (see Penal Law, § 130.60) as defined in subdivision 3 of section 130.00 of the Penal Law. Inapplicable therefore, is the rule that a defendant is immune from conviction for related crimes which do not require corroboration when there is uncorroborated testimony by the victim as to a consummated sex crime. (See People v. Colon, 37 A D 2d 21, 22-23 [2d Dept.].) It appears clear that a mistaken charge of a sex crime should not trigger the application of this rule; logically the vital question is not whether an offense requiring corroboration was charged, but whether complainant’s testimony showed the prepetration of such an offense. (Cf. Matter of Byron D. 36 A D 2d 742 [2d Dept.].)
The court concludes therefore that corroboration need not be considered in Virginia’s case and finds that the evidence with respect to Virginia proves beyond a reasonable doubt that respondent committed the acts constituting the other three crimes alleged in her mother’s petition: criminal possession of a dangerous instrument (Penal Law, § 265.05), menacing (Penal Law, § 120.15), and coercion (Penal Law, § 135.65).

. See People v. Radunovic, 27 A D 2d 916, 918 (1st Dept.; dissent); Matter of Sam F., 68 Misc 2d 244; letter of Justice Jambs B. M. McNally, N. Y. L. J., Jan. 21, 1972, p. 4, col. 7.

. Upheld against constitutional challenge in People ex rel. Pincus v. Adams (274 N. Y. 447). And see Spencer v. Texas (385 U. S. 554, 561-563).

. As to confidence in the greater capability of a Judge as compared to a jury to decide guilt or innocence, without prejudice from knowledge of inadmissible evidence, see People v. Brown (24 N Y 2d 168).

. Fictitious names have been used for the victims for the purpose of publication in order to avoid any possibility of their identification.

. See, also, People v. Duffy (212 N. Y. 57, 66-67) as to evidence of other crimes “ related in character, time and place of commission ”; People v. Molineux (168 N. Y. 264, 293); People v. Flaherty (162 N. Y. 532, 541); People v. O’Sullivan (104 N. Y. 481, 484); People v. Johnson (37 A D 2d 218, 222 [3d Dept.; dissent]); People v. Rutman, 260 App. Div. 784 [2d Dept.]); and see Spencer v. Texas (385 U. S. 554, 560-561).

. While some in and out-of-State cases bridge the step between evidence of similar crimes and identity of the defendant with the concept of “ a common scheme or plan ”, the new New York Criminal Procedure Law has omitted these “ cloudy terms ” for the sake of clarity (see Commentary to CPL 200.20; McKinney’s Cons. Laws of N. Y., Book 11A, p. 199). It likewise seems less cumbersome herein to consider the logical inferences as to each charged crime from the other crimes without this intermediate concept.