OPINION OF THE COURT
Hancock, Jr., J.
Defendant was convicted of robbery, second degree, for acting as a getaway driver in connection with the holdup of a Manhattan gas station committed by Ronnell Harrison. In his trial testimony, defendant offered an innocent explanation for his presence at the station and denied any knowledge that Harrison was intending to commit a robbery. The question presented on defendant’s appeal is whether the trial court erred in permitting the People to adduce evidence that defendant, driving the same car, participated with the same Ronnell Harrison in another gas station holdup 18 days later in Queens. For reasons stated hereafter, we hold that such proof was properly admitted under the intent or state of mind exception to the Molineux rule (People v Molineux, 168 NY 264) and, moreover, that this is so despite the fact that the other similar crime occurred after the crime in question. Accordingly, there should be an affirmance.
I
The robbery for which defendant was convicted occurred at 6:30 p.m. on December 21, 1984 at a Mobil gas station located at Canal and West Streets in Manhattan. According to the People’s witnesses, defendant, driving a red van, pulled up to the pumps on the Canal Street side of the station and asked the attendant on duty for $5 worth of gas. The attendant pumped the gas and returned to the driver’s window for payment. Defendant gave him a $10 bill. As the attendant, standing near the rear of the van, was making change, the passenger approached him from behind the van. With his hand under his jacket, as if pointing something, the passenger said "Give me the money”, grabbed all but one or two of the bills in the attendant’s hand, and reentered the van which drove off. Police, alerted by the proprietor of the station, overtook the van at the Manhattan Bridge. Defendant, who was driving the van, and Ronnell Harrison, the passenger, were arrested.
*477 At trial, defendant testified that he used his father’s van in connection with his employment for a delivery service and that he had occasionally hired Ronnell Harrison to accompany him. He acknowledged that he was at the Mobil station on December 21, 1984 with Harrison and that he purchased $5 worth of gasoline. He stated, however, that he had nothing to do with the robbery, that his first knowledge of it was when the police arrested him at the Manhattan Bridge, and that he was taken totally by surprise. He testified that he had known Harrison for some time and had no reason to believe that he was "the type of person that might go into a gas station and rob it”.
When asked about his contacts with Harrison after the Mobil station robbery, defendant said that he never again had Harrison help in making deliveries or took him in the van. The following testimony on cross-examination is significant:
"Q It is your testimony that you were taken totally by surprise at what happened at that Mobil Station; isn’t that correct?
"A Yes.
"Q And that’s the truth?
"A Yes.
"Q And you testified that you didn’t have anything more to do with Ronnell Harrison after that event; is that correct?
"A Yes.
"Q And that you didn’t drive with him in the red van any more after that?
"A No. I did not.
"Q License Number 7613 BAM; is that correct?
"A Yes.
"Q If I mentioned the date, January 8, 1985, would that jog your memory a little bit about any dealings you had with Ronnell Harrison after you were arrested on this charge?
"A No, it would not.” (Record on appeal, at 192.)
After a sidebar conference the court, over defendant’s objection, permitted the prosecuting attorney to ask the defendant —as bearing on his intent and state of mind — about his arrest for the robbery of a Texaco station in Queens on January 8, 1985, 18 days after the Mobil station robbery. In the Texaco station robbery, defendant, driving the red van which was used in the earlier robbery, again acted as getaway driver for Ronnell Harrison who committed the actual crime.
*478 On continued cross-examination, defendant denied any complicity in or knowledge of the Texaco station robbery. He admitted that he had been arrested in Queens, in the red van, several blocks from the robbery on the night it occurred. But he denied that he had been near the Texaco station at the time it was robbed and that he had driven anywhere with Ronnell Harrison on January 8, 1985. He specifically denied driving Harrison to the Texaco station and picking him up after Harrison’s attempt to hold it up with a shotgun.
At the close of defendant’s case, the court permitted the prosecutor to show through rebuttal witnesses that defendant and Harrison had participated in the Queens robbery. The prosecutor argued that, when "defendant took the stand and said that he was a victim of circumstance, that he didn’t have the specific intent or the mental culpability with respect to the crime that occurred at the Mobil station on December 21, 1984 [emphasis added]”, proof of another robbery involving defendant and the same accomplice, Harrison, became admissible under People v Molineux (supra). During the colloquy concerning this proof, the prosecutor argued that similar crimes occurring after as well as before the crime in question were admissible citing, among other cases, United States v Arroyo-Angulo (580 F2d 1137, 1149 [2d Cir]). Defendant objected, stating "the Molineux Doctrine * * * talked in terms of past crimes, talked in terms of past arrests. Is it now being offered to this Court before the jury that my client had the same intention eighteen days later as he had at that particular time [emphasis added]”. The court responded that "[s]tate of mind is the issue here * * * Yes” and overruled defendant’s objections.[1]
*479 The court, after the Queens robbery evidence had been received, instructed the jury that the proof was to be considered solely as bearing on defendant’s state of mind and as rebutting defendant’s claim that he had no idea that Ronnell Harrison intended to commit the Mobil station robbery. After the Appellate Division unanimously affirmed the conviction, defendant was granted leave to appeal. We now affirm.
II
Under the established rule, evidence of uncharged crimes is inadmissible unless offered for some purpose other than to raise an inference that a defendant has a criminal propensity (see, People v Molineux, 168 NY 264, 291-294, supra; People v Schwartzman, 24 NY2d 241, 247-248, cert denied 396 US 846). With limited exceptions (see, People v Alvino, 71 NY2d 233, 241-243), such proof is excluded as a matter of policy (see, People v Zackowitz, 254 NY 192, 198). When defendant’s criminal intent cannot be inferred from the commission of the act or when defendant’s intent or mental state in doing the act is placed in issue, however, proof of other crimes may be admissible under the intent exception to the Molineux rule (see, People v Alvino, supra). As explained by the Molineux court, proof of intent in such cases "is often unattainable except by evidence of successive repetitions of the act” (People v Molineux, supra, at 298). Admission of such proof — where intent cannot be inferred from the act or where defendant claims he acted innocently — is founded on the law of probabilities. The theory is that the more often the act constituting the crime has been done, the less the likelihood that it could have been done innocently, as if by chance (2 Wigmore, Evidence §§ 302, 312 [Chadbourn rev 1979]). The recurrence of the act negatives the possibility of good faith or inadvertence (see, 2 Wigmore, Evidence ^ 351 [Chadbourn rev 1979]).
In the case before us, defendant — by testifying that his purpose for being at the Mobil station on December 21, 1984 was to purchase gasoline and that he had no idea that Harrison was intending to commit a robbery — put the question of his criminal intent and state of mind directly in issue. Unquestionably, under our established case law pertaining to the Molineux intent exception, proof that defendant and Harrison had acted together in another similar gas station holdup *480 would be admissible (see, e.g., People v Alvino, 71 NY2d, at 242-243, supra; People v Schwartzman, supra, at 247-248). The other robbery has obvious relevance as tending to refute defendant’s claim of an innocent state of mind (see, People v Schwartzman, supra, at 248; 2 Wigmore, Evidence § 302 [Chadbourn rev 1979]).
It is argued, however, that the rule should be different because the Queens robbery occurred after rather than before the crime in question. We disagree. It is the duplication of the inculpatory conduct which makes the innocent explanation improbable. That defendant was present with his van at two gas station robberies, with the same accomplice, within 18 days, casts serious doubt on the assertion that his presence at either crime scene was innocent. The improbability exists regardless of the sequence in which the two crimes occurred. As stated by Dean Wigmore, "it is the repetition * * * that is significant, and a subsequent instance reduces the probability of innocence equally as well as a prior one” (2 Wigmore, Evidence § 321, at 285 [Chadbourn rev 1979]). Proof of the second robbery was properly received under the Molineux intent or state of mind exception as showing that defendant had the mental culpability required for criminal liability under Penal Law § 20.00. His presence with Harrison at the second robbery clearly tended to discredit his testimony that his stop to buy gas at the earlier robbery site was merely coincidental and without criminal purpose and that, while he did, in fact, aid Harrison, he did so unintentionally because he was unaware that Harrison was committing the robbery.[2]
Most often, of course, defendant’s intent or state of mind is established by proving prior similar crimes. Authority is *481 ample, however, for the admissibility of similar subsequent crimes as well. Our court, for example, has held that proof of a subsequent drug offense may be admitted to show defendant’s predisposition in order to refute the defense of entrapment (see, People v Calvano, 30 NY2d 199, 206); and that subsequent fraudulent acts may be shown to establish defendant’s fraudulent intent and guilty knowledge with respect to the fraudulent act charged (see, People v Marrin, 205 NY 275, 282-283 [see, discussion of Marrin in People v Rutman, 260 App Div 784, 787]; Mayer v People, 80 NY 364, 373-376 [setting out at length the unpublished opinion by Judge Earl in People v Shulman, 76- NY 624]; Richardson, Evidence § 177 [Prince 10th ed]; see also, Pierson v People, 79 NY 424; People v Holmes, 112 AD2d 739; People v Rutman, supra).
We hold, then, that the trial court did not err in admitting proof of the January 8, 1985 robbery as bearing on defendant’s intent and state of mind. Although legally admissible, whether the probative value of such proof outweighed its prejudice was a question for the exercise of the trial court’s discretion and is not at issue here (see, People v Alvino, 71 NY2d, at 242, supra; People v Ventimiglia, 52 NY2d 350, 361-362). Our holding, we note, has support in Federal decisions (see, e.g, United States v Arroyo-Angulo, 580 F2d 1137, 1149 [2d Cir], supra; United States v Cavallaro, 553 F2d 300, 305 [2d Cir]; United States v Grady, 544 F2d 598, 605 [2d Cir]) and in holdings of other State courts (see, e.g., State v Scherer, 77 Wash 2d 345, 462 P2d 549, 553, 554, 555; State v Eubanks, 86 Idaho 32, 383 P2d 342, 345 [1963]; 2 Wigmore, Evidence §§ 316, 321, at 284-285 [Chadbourn rev 1979] [collecting cases]).
We have examined defendant’s other contentions and conclude that they are without merit. Accordingly, the order should be affirmed.

. In its limiting instructions to the jury, the court stated that the Texaco robbery evidence was offered "solely for the purpose of rebutting the defendant’s testimony that he did not know Ronnell Harrison would commit the robbery charged”; that it was for the jury to determine "the sufficiency of such evidence of proof of the defendant’s knowledge or state of mind”; and that "it was for the state of mind of the defendant, what he knew and that this was his buddy in the robbery”. Essentially the same instruction was given in the court’s final jury charge. No exception was taken to the wording of either instruction and no request for a further or different instruction was made. Defense counsel, noting that the proof had been admitted "for the purpose of proving the intent of the defendant,” excepted to the final charge on the sole ground that "the very fact it was permitted in, and statement made of a shotgun, is prejudicial”. Thus, the only question before us is whether the evidence was properly admitted under the Molineux intent exception. No question concerning the imprecision of the court’s limiting instructions is preserved for our review; nor is such question addressed in the briefs.

. This is not a case where the purpose of the proof of the subsequent crime was to establish defendant’s prior actual knowledge of some specific fact as an essential element of the crime (see, discussion of distinction between other crimes evidence bearing on intent as opposed to that bearing on defendant’s actual knowledge in 2 Wigmore, Evidence §§ 301, 302, 316, 321 [Chadbourn rev 1979]). As Wigmore points out, a subsequent act obviously cannot serve as a warning or as proof of defendant’s actual knowledge of a particular fact or condition at an earlier time. The situation is different, however, where intent, or "guilty knowledge”, is the issue. As is the case here, a subsequent crime is relevant to show the improbability of a defendant’s claims of unwitting complicity in an earlier crime and of ignorance of his accomplice’s criminal purpose. As Wigmore states: "in evidencing intent it is the repetition of instances that tends to negative innocence in particular instances, and thus it is immaterial whether the instances are found occurring before or after the act charged” (id., § 316, at 274).