OPINION OF THE COURT
Patrick H. Mathews, J.
The defendant is charged, with his codefendant Goodman, with intentional murder, felony murder, robbery, and burglary. His first trial ended in a mistrial based upon the reaction of the jury when the prosecutor sought to impeach the credibility of the defendant’s girlfriend by questioning her about subsequent crimes. The two questions involved her role in three murders/robberies 20 days after the murder/robbery for which the defendant was indicted. Although the witness invoked her Fifth Amendment privilege not to answer the questions, which had been asked over the defendant’s objection, the shocked reaction of the jury convinced the court that the prejudicial effect of the brief interchange between the witness and the prosecutor had effectively deprived the defendant of both his right to testify and his right to a fair trial.
In the second trial of this indictment, the prosecutor seeks a ruling that such evidence is permissible rebuttal evidence directly relevant to the issues of the defendant’s intent to kill and intent to rob pursuant to People v Molineux (168 NY 264 [1901]). Oral argument on the issue was heard, in the defendant’s presence, on January 17, 1990. The People offered that the Mississippi crimes involved the same actors, the same modus operandi of gaining consensual entry, and the same *759 intent to rob and to murder, all in close temporal, although subsequent, proximity.
Initially, the court rejects the defendant’s argument that the prior ruling prohibiting use of this evidence is the law of the case and therefore binding at all subsequent trials. Evidentiary trial rulings such as the one at issue, as distinguished from suppression determinations, are normally not binding in future proceedings (People v Nieves, 67 NY2d 125 [1986]; People v Malizia, 62 NY2d 755 [1984]). Moreover, at the earlier trial, the prosecution had introduced this evidence for purposes of impeaching the credibility of the defendant’s witness; in contrast, the instant application seeks an advance ruling, pursuant to People v Ventimiglia (52 NY2d 350 [1981]), on the admissibility of Molineux evidence in rebuttal. Since the circumstances of this case present no reason to deviate from the general rule, this court is free to hear and decide this issue (People v Gilbert, 122 AD2d 454 [3d Dept 1986]).
The determination of whether to allow unrelated other crime evidence to be introduced at trial involves a two-pronged test. The first part of the test determines whether the requested evidence is relevant to some issue at trial. If the defendant or his witness testifies that his purpose for being in the house was innocent, and that he did not know of, and therefore did not share in, Goodman’s plans or intent, then the defendant will be putting his criminal intent and state of mind directly in issue. Evidence that the defendant was involved in almost identical conduct, with the same companions, within 20 days of the subject incident, will therefore be clearly relevant to the issue of his intent at the time of the crimes charged in the instant indictment (People v Ingram, 71 NY2d 474 [1988]; People v Alvino, 71 NY2d 233 [1987]).
The more problematic part of the analysis is the weighing of the probative value of such evidence against its prejudicial effect, the latter apparently being so clearly evident when the matter was revealed to the jury at the first trial. Without doubt, the evidence of the Mississippi murders is extremely prejudicial due to the nature of the conduct alleged; the question is whether that prejudice outweighs the probative nature of the evidence. In balancing these factors, the court must assess the prosecutor’s need for the evidence and whether the evidence is offered on the People’s direct case or otherwise (People v Ventimiglia, supra, at 360). "If the evidence is actually of slight value when compared to the possi *760 ble prejudice to the accused, it should not be admitted” (People v Allweiss, 48 NY2d 40, 47 [1979]).
The extent of the probative value of the Mississippi evidence is clear. Since shared intent is rarely, if ever, determinable from direct evidence, the prosecutor must establish that the defendant’s intent to rob and intent to kill is inferable from the defendant’s actions and statements. It is expected that the defendant will endeavor to establish that he did not have the requisite criminal intent, that he was not, as contended by the People, ransacking the house at the time that the shots rang out from the bedroom above, and that he had not known what his codefendant had intended to do. Such evidence, if credited by the jury, would suggest not only that the defendant was surprised by the turn of events, but would also cast doubt over the validity and trustworthiness of the oral and written statements given by the defendant to the police. On the precise facts of this case, where the People must establish the shared intent of the coperpetrators, such evidence would go to the very heart of the issue.
The fact that the uncharged crimes evidence involves other murders does not make the evidence per se unduly prejudicial. Indeed, Ventimiglia (supra) itself involved the admissibility of testimony regarding the regular "dumping ground” for bodies of the defendants’ earlier victims. In People v Willsey (148 AD2d 764 [3d Dept 1989], lv denied 74 NY2d 749 [1989]), the defendant was charged with the murder of his lover’s second husband. To this end, upon their theory that the defendant killed everyone who stood between him and the woman, the People sought to introduce on their direct case evidence that he had been having an affair with the woman while her first husband was in prison, and that he killed the first husband on the day that the man was released from prison. The People contended that the evidence fit the Molineux exceptions of motive, common plan or scheme, intent, and identity. The Third Department addressed only the motive exception, finding that the evidence established the motive of extreme jealousy and possessiveness, which "far outweigh[ed] any unfair prejudice inherent in bringing the prior crime to the jury’s attention.” (People v Willsey, supra, at 766.) Of particular significance to the case before this court is that despite the strength of the People’s case against defendant Willsey — the defendant’s signed, detailed confession, testimony placing the defendant at, near, and/or fleeing the scene, the defendant’s ownership and possession of the murder weapon, blood match *761 ing that of the victim on the defendant’s hand and on the murder weapon, and testimony that the defendant had spoken of planning to kill the victim — the People were permitted to introduce evidence of the prior murder on their direct case.
In People v Band (125 AD2d 683 [2d Dept 1986]), the People were permitted to introduce evidence in a homicide prosecution that the defendant had, on separate occasions during the year preceding the subject homicide, asked various witnesses for the name of someone who would kill in exchange for money. The court found that because the primary issue in the case was whether the death was accidental or a homicide, the evidence was directly probative of the defendant’s motive and intent, and found further that its probative value outweighed the potential for prejudice.
People v Warren (162 AD2d 361 [1st Dept 1990]) involved a defendant on trial for murder and robbery. The court found that the probative value of evidence of the defendant’s and codefendant’s prior commission of so-called "punch robberies”, using an identical modus operandi, outweighed its potential for prejudice in that the evidence established their shared intent to rob and cause the death of the decedent, citing Alvino (supra) and Molineux (supra).
It is true that these cases involved prior murders and/or other violent crimes, and the court agrees with the defendant that prior conduct is more probative than subsequent conduct. In allowing evidence of subsequent conduct, however, the Court of Appeals in Ingram (supra, at 480), addressed the question of why subsequent conduct does have significant probative value: as evidence of intent, subsequent conduct serves to lessen the odds that the prior conduct, that for which a defendant stands trial, was innocent. The court emphasized that the successive repetitions of the act lessened the chances that the particular conduct with which a defendant was charged was unintentional. The court went on to note that it mattered not whether the repetition occurred before or after the charged crime insofar as the law of probabilities was concerned. In light of this analysis, it seems unreasonable to this court that in an otherwise proper case, the Ingram rule becomes inapplicable because the defendant chose to engage in successive murders rather than less shocking crimes.
Therefore, should the defendant on his case elicit testimony tending to establish that he was ignorant of Goodman’s crimi *762 nal purpose (intent to rob and/or kill), evidence of the murders/robbery involving Richard and K. C. will be received under the Molineux exception as proof that defendant had the mental culpability required for criminal liability under Penal Law § 20.00. These crimes so closely mirror the incident charged in the indictment — the same actors, the homosexual tie-in, the consensual entry into the house, the shootings and robbery — that the Ingram standard for admissibility on the issue of the defendant’s intent to rob and intent to kill has been met (People v Warren, supra).
The killing of the third Mississippi victim was slightly different but nevertheless also admissible under Ingram (71 NY2d 474, supra), although solely on the issue of the defendant’s shared intent to kill. The proof that the People proffer regarding this third subsequent homicide lacks any real probative indication of the defendant’s intent to rob. The available evidence suggests that this killing was planned solely out of motivation to eliminate a potential witness, the larceny being an afterthought. The recurrence of a homicide, however, in the victim’s residence, by firearm, with the defendant and Goodman present after a consensual entry, within 20 days of the events which are the subject of the present indictment, is potent evidence which tends to negate inadvertence, defensive purpose, or innocent intent.
The Court of Appeals in Ingram (supra) drew upon the reasoning of Dean Wigmore with respect to the probative value of subsequent similar acts upon the issue of intent. Wigmore indicated that there is no fixed rule regarding the similarity of the subsequent events: "a correct application of the principle would receive any evidence of the sort which conveys any real probative indication of the defendant’s intent.” (2 Wigmore, Evidence § 363 [2] [Chadbourn rev 1979].) Here, the People’s proof of the third Mississippi homicide contains the defendant’s express admission that he and Goodman went to the victim’s house to kill him. This evidence is exactly the type of substantive probative indication of the defendant’s intent contemplated by Wigmore and the Ingram court. Accordingly, evidence of this third Mississippi homicide will be admissible on the issue of the defendant’s shared intent to kill.
The court finds further that the subject evidence may properly be offered in rebuttal. Rebuttal evidence is "not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but *763 evidence in denial of some affirmative fact which the answering party has endeavored to prove” (People v Harris, 57 NY2d 335 [1982]). In Harris (supra), evidence of intent was offered in rebuttal to contradict the alternative state of mind offered by the defendant to explain her actions. Since the defendant is expected to endeavor to establish that the defendant did not share the intent of his codefendant, evidence of the Mississippi crimes is proper rebuttal to overcome this testimony (People v Cade, 73 NY2d 904 [1989] [alibi offered through defendant’s brother; rebuttal testimony of brother’s parole officer regarding brother’s statement which flatly contradicted his alibi testimony at trial]; People v Alvino, supra [uncharged drug crimes evidence in rebuttal of defendant Hernandez’s testimony regarding lack of intent]; People v Ingram, supra [evidence of subsequent similar gas station robbery in rebuttal after defendant’s testimony regarding innocent state of mind]).
Applying the foregoing examples, precedents, and reasoning to its balancing analysis, the court has determined that the People shall be allowed to present evidence of the Mississippi murders/robbery in rebuttal. However, all reference to arson committed in connection therewith shall be redacted (People v Ely, 68 NY2d 520 [1986]).
Contrary to the defendant’s position, this ruling does not deprive him of his opportunity to present his defense or deprive him of a fair trial. The arguments made by the defendant in opposition to the People’s application are those he must make to the jury in support of his defense: that the subsequent crimes are not conclusive, that their probative value vis-á-vis the charged crimes is minimal, that he was taken unaware by his codefendant’s actions in Windsor, that his going to Mississippi with his codefendant was not a smart thing to do, but he was afraid, etc.
The final question to be determined is whether the prosecutor should be allowed to question the defendant’s girlfriend about these other crimes should she testify at the second trial. A review of the relevant case law persuades the court that this witness should not be questioned about the Mississippi murders. Since it is likely that she will again invoke her Fifth Amendment privilege, compelling her to do so in front of the jury can only have the effect of impermissibly corroborating or adding critical weight to the rebuttal testimony which the People will be introducing thereafter (People v Berg, 59 NY2d 294 [1983]; People v Jones, 138 AD2d 405 [2d Dept 1988]; People v Malphurs, 111 AD2d 266 [2d Dept *764 1985]). Any prejudice which might inure to the People’s case from this must yield to the defendant’s interests, and, in any event, can be addressed in summation should the defendant comment upon the failure of the People to question the witness about her involvement in the Mississippi incidents (People v Pollock, 21 NY2d 206 [1967]). Moreover, once the testimony of the witness has put the defendant’s intent in issue, rebuttal evidence is proper irrespective and independent of whether this question is put to the witness.
For the foregoing reasons, the People’s application to introduce evidence of the Mississippi crimes is granted to the extent set forth above.