■ The People of the State of New York, Respondent, v Francisco Pena, Appellant. [673 NYS2d 688] —Judgment, Supreme Court, New York County (Antonio Brandveen, J., at suppression hearing; Michael Corriero, J., at *Massiah* hearing, jury trial, and sentence), rendered March 16, 1995, convicting defendant of attempted assault in the first degree and assault in the second degree, and sentencing him to concurrent terms of 2$\frac{1}{3}$ to 7 years, unanimously affirmed.

Defendant's suppression motion was properly denied. The detailed description of the teenagers who attacked two homeless people, which was provided by several eyewitnesses and included such details as the number of males and females in the group, as well as their race, approximate age, clothing and the fact that one of the girls had an ace bandage wrapped around her arm, warranted the officers' stopping of a group of three individuals who matched the description, including the telltale ace bandage, who were spotted on a deserted street in the early morning hours, in close proximity in both time and distance to the attacks (*see, People v Robinson*, 231 AD2d 429, *lv denied* 89 NY2d 929). The police were therefore justified in apprehending, and detaining for identification, defendant and two codefendants, who sufficiently matched the description of the three missing perpetrators, were walking in the same direction as, and only one-half block away from, the other three, and took evasive action upon sight of the officers (*see, People v Morales*, 246 AD2d 396; *Matter of Robert R.*, 231 AD2d 406). The manner in which the showup was conducted was not unduly suggestive under the totality of the circumstances including the exigencies of the situation (*see, People v Love*, 57 NY2d 1023; *People v Lewis*, 243 AD2d 256, *lv denied* 91 NY2d 894). In any event, any error in admitting the identification testimony was harmless, in view of the overwhelming evidence of identity, including testimony from codefendants as to the group's commission of the offenses, and the identification testimony of an eyewitness who had not viewed the showup (*see, People v Adams*, 53 NY2d 241, 252). Moreover, defendant's defense at trial was that he was present but did not participate in the attacks.

Since the core of defendant's case was neither irreconcilable with that of his codefendants, nor would any conflict among the defenses lead the jury to infer, from that fact alone, defendant's guilt, the trial court properly exercised its discretion in denying defendant's motions for a severance (*see, People v Mahboubian*, 74 NY2d 174, 183-184).

Evidence of defendant's uncharged prior offenses, consisting

of attacking homeless people in precisely the same spot one week earlier, was properly admitted as probative of his knowledge that a homeless person was indeed sleeping in the cardboard box that he helped set afire in the instant case, as well as his intent to participate in these attacks (*see, People v Ingram*, 71 NY2d 474; *People v Alvino*, 71 NY2d 233, 241-242, 245-247; *People v Molineux*, 168 NY 264, 293).

Defendant was not prejudiced by the fact that a codefendant, who had secretly pleaded guilty and entered into a cooperation agreement, sat during the first day of the suppression hearing with the remaining defendants, who were unaware of that agreement. After a thorough *Massiah* (*Massiah v United States*, 377 US 201) hearing, the court properly found that the codefendant imparted nothing she overheard, either from the defendants or their attorneys, to the prosecutor, and actually provided defendants with some helpful information, which they used during the suppression hearing. "As long as the information possessed by [the cooperating codefendant] remained uncommunicated, [she] posed no substantial threat to [defendant's] Sixth Amendment rights" (*Weatherford v Bursey*, 429 US 545, 556). Concur—Milonas, J. P., Wallach, Williams, Tom and Mazzarelli, JJ.