[No. 38370. Department One. October 19, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES WINSTON KANE, *Appellant*.*

*Dore, Dubuar & Cummins*, by *Fred H. Dore* and *David C. Cummins*, for appellant.

*Charles O. Carroll* and *David L. Scott*, for respondent.

HALE, J.—This is an appeal from a judgment and sentence of conviction for burglary. The prosecuting attorney for King County, by amended information, charged the defendant in count 1 with grand larceny by concealing and withholding from Ronald J. Eberle, a Packard Bell television set. The jury found defendant not guilty of count 1. Count 2 charged the defendant with grand larceny by concealing and withholding from Ronald J. Eberle 16 separately described television sets and 1 television stand. The jury found defendant not guilty of count 2. Count 3 of the information charged defendant with burglary in the second degree in breaking and entering the Empire Television Company building in Seattle, alleging that the building was neither owned nor lawfully occupied by the defendant. From a judgment entered on a verdict of guilty as to count 3, the burglary count, defendant appeals, urging principally

*Reported in 432 P.2d 660.

that the evidence was insufficient to support a conviction of burglary.

A study of the whole record shows the defendant's claim of insufficiency of the evidence to be well taken. The business relationship existing between defendant Kane and his prosecuting witness, Ronald J. Eberle, concerning the operation of Eberle's Empire Television Company so dominated and conditioned the events upon which the burglary conviction was had as to leave in grave doubt whether the acts came under the criminal code or should be left exclusively to the civil courts. In other words, the wrong proved was a civil wrong, possibly a conversion of personalty or a trespass upon real estate, or mischief in breaking a window, but not a burglarious entry.

Evidence showed that Eberle, in early fall, 1963, opened a television and radio sales, service and rental store in Seattle called the Empire Television and Radio. About December 1, 1963, he engaged defendant Kane as his manager. Eberle, as owner, was to receive 10 per cent of the gross receipts. Salesmen were to be paid a 35 per cent commission based on gross sales and Kane, after paying for the sets and all other overhead and operating costs, would retain the balance for his services as manager. If Kane made a sale, he would receive the 35 per cent salesman's commission as well.

Kane brought a number of his own television sets into the business and they were offered for sale and rental. Prior to appointing Kane as manager, the business volume had been low. Eberle testified that "[I]t was nothing . . . . I knew there would be a lot of bad months ahead." He said that, after Kane became manager, business improved considerably. Describing the improvement, he said, "We did a tremendous volume, probably around four, four thousand, five thousand dollars worth in volume actually, but a lot of this we had to go back on."

Kane operated the store as manager for about 7 weeks—from December 1, 1963, to January 20, 1964—when Eberle fired him. As manager, Kane had been furnished a set of

keys to the store by Eberle, and had unlimited access to the store. Kane claimed a partnership status in the business. During this 7-week tenure, he had taken from the business only $200 in compensation but had put into the concern 22 television sets of his own. Eberle had a list of these sets and kept a running account of their disposition—whether sold, unsold, rented, or repossessed. Eberle testified that, when he discharged Kane, he felt the latter had no money coming "because of the expenses that were incurred."

The two men had a dispute as to whether Kane was entitled to more than the $200 he had drawn for his services and also over the ownership or right to possession of a number of television sets.

February 1, 1964, Eberle went to Kane's apartment and, without the latter's knowledge or consent, took from the bedroom 5 television sets. Eberle knew he had no claim to ownership or possession of these sets. When Kane returned to his apartment that night and discovered his television sets missing and learned from the apartment manager that Eberle had taken them, he became very angry, claiming these sets had never been in or a part of Eberle's television business. Kane called the Seattle Police Department which dispatched two officers to his apartment. He said that he wanted to file charges against Eberle, but the officers informed him that, since he had been in business with Eberle, the dispute was strictly a civil matter and that Kane should consult a lawyer. The officers admonished him that if he attempted to retake his television sets it might constitute a burglary. The officers, however, apparently not wishing to return to headquarters empty-handed, arrested Kane for delinquent parking tickets.

The next morning, Sunday, February 2, 1964, at 6 a.m., Kane, having made bail and apparently motivated in some degree by a spirit of retaliation, took a truck to Eberle's Empire Television and Radio. He tried to open the door with his key but found the locks had been changed on both front and back doors. Thereupon he broke a window near the door, reached in and unlatched the door.

In the store, he was unable to locate 12 or 13 of the television sets he had brought into the business but loaded 26 television sets into the truck. He took the sets first to a motel where he called an attorney who told him to make a list of the television serial numbers. He then took the sets to a public warehouse and placed them in storage.

Kane's attorney testified that late in February, 1964, acting on his client's behalf, he had furnished the Seattle Police Department with a complete list of the sets, describing them by name and serial number and stating that the sets were not lost but were claimed as assets of a partnership undergoing dissolution. However, one police officer testified that, on February 14th, he had asked Kane about taking the sets and that Kane had denied any knowledge of them.

Meanwhile, Kane, on February 20, 1964, commenced a civil action against Eberle asking for a dissolution of the asserted partnership and an accounting of the claimed partnership assets. The case came on for trial April 26th, and on April 28th the trial court, finding neither a liability against Eberle nor a partnership, ordered a dismissal. May 26th, about one month later, the prosecuting attorney filed the instant information containing, as we have noted, two counts of grand larceny which were disposed of by verdicts of not guilty and the present count of burglary in the second degree.

We feel obliged, under the whole record, to reverse and order count 3 dismissed for the reason that, despite the verdict of guilty, the evidence appears insufficient to support the verdict. The information charged Kane with burglary by breaking and entering under RCW 9.19.020, which declares:

> Every person who, with intent to commit some crime therein shall . . . break and enter . . . any building or part thereof . . . wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree . . . .

We recognize, of course, that a verdict based on substantial, competent evidence will not be disturbed on

review (*State v. Gilmore*, 42 Wn.2d 624, 257 P.2d 215 (1953)), and that the jury is the sole and exclusive judge of the evidence. *State v. Davis*, 53 Wn.2d 387, 333 P.2d 1089 (1959). Accordingly, the reviewing court will not reverse if there is substantial evidence to support the jury's findings. *State v. Mickens*, 61 Wn.2d 83, 377 P.2d 240 (1962).

But a reviewing court may examine the whole record and ascertain whether the evidence supporting the verdict is substantial or merely colorable. *State v. Hoffman*, 64 Wn.2d 445, 392 P.2d 237 (1964).

Long ago we said that, if sustaining the verdict will not subserve the ends of justice, we will not do so. *State v. Newton*, 39 Wash. 491, 81 Pac. 1002 (1905).

We are of the opinion that the jury here had to indulge in speculation and conjecture to find evidence of an intent to commit a crime in the television store when Kane broke the glass and reached in and unlatched the door. Taking into consideration the admitted business relationship and numerous transactions between and affecting Kane and Eberle, and Kane's lawful possession of keys in accordance with a pre-existing right to access, we find no evidence of a criminal purpose. Although Kane probably did commit a trespass and, despite his claim of a partnership and request for dissolution and an accounting, and may have been guilty of a civil conversion, the record is devoid of proof of criminality. At most, it shows a civil wrong.

Just as we do not condone the action of Eberle in going to Kane's apartment and removing 5 television sets from his bedroom, neither do we excuse Kane's actions in forcibly opening the back door of the television store when he found his keys would not fit, and taking out the 26 television sets. Two wrongs do not make a right, but neither do they necessarily constitute a crime.

Our review of the whole record shows a number of actionable civil wrongs redressable in the civil courts but, even when added together, no substantial evidence of a burglary.

Reversed and dismissed.

FINLEY, C. J., HILL and ROSELLINI, JJ., concur.