[No. 40521.    Department Two.    December 4, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. J. A. SCHERER, *Appellant.**

*Reported in 462 P.2d 549.

*Parr, Baker, Alexander & Cordes,* by *Clifford F. Cordes, Jr.,* for appellant.

*Fred D. Gentry* and *Hugh W. Judd,* for respondent.

ROSELLINI, J.—The appellant was found guilty on two counts of larceny by check. The evidence showed that, as president of Scherer & Company, Inc. (a retail seller of building supplies), he had signed two checks for $250 and $300 in payment for supplies furnished by a wholesaler, Harris Company, at a time when he did not have funds on deposit to cover either of them. He contends that the evidence was insufficient to support the verdict.

According to the evidence presented, the appellant was president and principal stockholder of Scherer & Company. Over a period of years, his company had purchased large quantities of materials from Harris Company on open account, and by the spring of 1967 was indebted to that company in the amount of some $30,000 to $40,000. Scherer & Company was in danger of bankruptcy, and if Harris Company had sued for the amount owed it and had attached the assets of Scherer & Company, the latter could not have continued in business.

Since there were many other creditors of Scherer & Company, including the Small Business Administration and the Washington State Department of Revenue, Harris Company would have been able to recoup only a small part of the amount owed it, if any, had Scherer & Company been thrown into bankruptcy or receivership. Therefore, it accepted a note for the amount then owed to it and agreed to continue supplying materials to Scherer & Company, in order to assist that company in remaining in business. It exacted an agreement, however, that all materials would be paid for within 2 weeks after delivery and that, if these terms were not observed, availability of materials would terminate. This agreement was signed June 5, 1967.

Scherer & Company did not pay for the materials furnish-

ed as agreed; and about the first part of July, the appellant was notified by Mr. Pilgrim of Harris Company that henceforth all sales would be on a cash basis. Because the exact amount of the charges on any sale of materials could not be determined until after the truck sent by Scherer & Company was loaded, and because it was inconvenient for the appellant always to accompany the truck making the pickup and wait for the invoices to be extended, the system used thereafter was as follows:

The appellant would either send a check with the driver which was more than sufficient to cover the anticipated cost of the materials, or he would stop by the office of Harris Company before, at the time, or immediately after the materials were picked up and leave a check in an amount more than adequate to cover the purchase. Any excess of payment was applied to the reduction of the balance owed on the past due account after the invoice for the particular delivery was extended.

On September 13, 1967, Scherer & Company purchased and secured delivery of materials in the total amount of $234.70, for which the appellant signed a check for $250; and on September 15, 1967, it purchased materials invoiced at $157.25, for which the appellant signed a check for $300. When these checks were presented for payment in the regular course of business, there was the sum of $38.58 on deposit in the account of Scherer & Company. On September 13th, the account had contained $40.20, and on September 15th, it had contained $35.70. The account was reduced after that to the final sum of 25 cents, and there were never at any time sufficient funds to pay the checks.

The appellant testified that, at the time these checks were written, he had in his office the sum of $1,267.38; but that all but $7.38 of this amount was drawn upon by the Small Business Administration at the moment of deposit for a past due debt under a preexisting agreement. The deposit slip showed the deduction so that the bank showed a deposit of only $7.38.

Thereafter, the accounts receivable were attached by the Washington State Department of Revenue, as was the cash

on hand, and the business became, for all practical purposes, defunct. The checks given to Harris Company were never paid nor was the note or preexisting indebtedness paid. When it became manifest that the checks were not going to be made good, Harris Company turned them over to the police department of Olympia and this prosecution followed.

In arguing his contention that the evidence was insufficient to support the verdict, the appellant urges that the checks were not given in exchange for materials but were simply payments on the open account. He concedes that there was evidence to the contrary but maintains that the case must rest, not upon the circumstantial evidence or testimony of other witnesses, but upon the appellant's testimony about the nature of his understanding of the agreement between the parties.

The appellant admitted that he was required to furnish checks at or about the time of each purchase, but he did not consider these to be cash payments. He said:

> Cash to me means green stuff. I mean, I have been in business long enough that when you say "cash," that's cash. A check is only good when it goes through the bank and it clears.

He said that the purpose of the checks, as he understood it, was to "hold our account down so we would not—the over-all account would not be greater."

This statement is not inconsistent with the testimony by Mr. Pilgrim of Harris Company that he demanded cash for all materials sold after the first part of July. The only way Scherer & Company could "hold" the account down was, of course, to pay cash for all purchases made thereafter.

Even though the appellant may have considered his checks nothing more than promissory notes, the fact is that, as long as there was money in the bank to pay them, they were as good as cash. In any event, they were exacted and accepted, the jury could find, as payment for the materials furnished; and this is the significant fact in determining whether the person to whom the check has been issued has

been defrauded. As the trial court instructed the jury, in order to convict the appellant it was necessary for it to find that, by color and aid of check, the appellant willfully, unlawfully, fraudulently, and feloniously obtained from the Harris Company the possession of merchandise and cash monies of a value in excess of $25, knowing that the drawer of the check was not authorized or entitled to draw the same. RCW 9.54.010 (2).

The evidence showed that the appellant knew that there were insufficient funds in the bank to pay the checks and thus he was not entitled to draw them, and that he admitted that he gave them in order to obtain possession of merchandise of value in excess of $25. The evidence also showed that he did not have funds on hand to cover the checks and meet his other pressing obligations, and that it would have been fortuitous indeed if the Small Business Administration had failed to draw upon his deposit and had allowed his other creditors to claim it. The jury could and apparently did find that he had no reason to believe that this would happen.

Whether the appellant thought the checks were "cash" is immaterial. It is the issuing of a check for a fraudulent purpose which is made a crime by the legislature.

The evidence was clear that the checks were issued unlawfully, that is, upon an account in which there were insufficient funds to cover them. The jury could rightly infer that they were issued willfully and with fraudulent intent, that is, with the intent that goods would be furnished in reliance upon the worth of the checks.

In *State v. Bradley*, 190 Wash. 538, 546, 69 P.2d 819 (1937), in discussing the worthless check statute (now RCW 9.54.050), we said:

> Common business experience tells us that the evils sought to be prevented by the statute were serious in their nature and of frequent occurrence. It is equally evident that the statute is a strict one, and that the gist of the offense lies in the intent to defraud and the knowledge of the worthlessness of the check.

The worthless check statute punishes the issuer of a bad

check, even though he has obtained no goods in exchange for it. The crime is petit larceny. *See In re Sorenson v. Smith,* 34 Wn.2d 659, 209 P.2d 479 (1949). The only essential difference between the crime defined in that statute and the crime defined in RCW 9.54.010(2) is that, under the latter, the *obtaining of property* by color or aid of a worthless check is an element.

Here there was ample evidence to support the jury's finding that the appellant had issued the checks with the intent to defraud and had in fact obtained possession of property by color or aid of the checks, and that he knew the checks were worthless.

The appellant contends that this case is controlled by our ruling in *State v. Kane,* 72 Wn.2d 235, 432 P.2d 660 (1967). In that case, we held that the evidence was insufficient to support a jury finding that the defendant committed a burglary, where it showed that he had been employed as manager of the prosecuting witness's television store, had contributed a number of television sets to the business, and had had a key to the store. After he was fired, he attempted to enter the store with his key but found the lock changed. He broke a window pane in order to enter the store and take television sets in which he claimed an interest as partner in the business. Although a jury had found that he was not in fact a partner, we held that, under the peculiar circumstances of the case, there was not a sufficient showing of criminal intent to support a verdict.

The only similarity between that case and this, which the appellant has been able to draw to our attention, is the fact that a "business relationship" was present in both cases. However, that case is not to be understood as holding that a person may not be guilty of a crime if his victim has a business relationship with him. Certainly it does not stand for the proposition that a buyer who defrauds a seller can be guilty only of a civil wrong. Such a holding would defeat the purpose of RCW 9.54.010(2), which was designed to discourage and punish such practices. We find no merit in the appellant's analogy.

The appellant next urges that the court erred in admitting in evidence two worthless checks which were issued by the appellant approximately 2 weeks after he issued the checks involved in this suit. He claims that the evidence was irrelevant and prejudicial. We have held that evidence that other worthless checks were issued at about the same time as those upon which the prosecution is based is relevant and competent to show a general plan of operations, as well as knowledge that the checks would not be paid upon presentation. *State v. Bradley, supra.* We have also held that such evidence is competent to prove intent. *State v. Jeane,* 35 Wn.2d 423, 213 P.2d 633 (1950). The fact that the evidence tends to show the commission of other crimes does not render it incompetent if it is otherwise material and relevant. *State v. Jeane, supra.*

Nor is there any merit in the appellant's proposition that only evidence of *prior* similar acts is admissible. He cites no authority to sustain that proposition and we know of none. A similar act done a short time after the commission of the crime charged is just as relevant to prove intent, plan, or knowledge, as one done a short time prior thereto. If the act is in fact similar to the act which forms the basis of the charge and if it occurred at a time when it can reasonably be assumed the defendant was acting under the same motivations and conditions, it is relevant as bearing on these factors.

Here the checks were issued by the appellant, acting in the same capacity, in the same business, and when the financial affairs of the business were in approximately the same condition. It is true that they were issued approximately 2 weeks after the checks were issued to Harris Company, but this was not a time so remote from the time of the crime as to render the subsequent acts irrelevant. The weight of the evidence was for the jury.

The appellant says that the court should have instructed the jury that these checks were to be considered only as bearing on the question of intent and not on the question of knowledge. Assuming that such a limiting in-

struction would have been proper, it was not requested and error cannot be predicated on a refusal to give it.

Error is assigned to the refusal of the appellant's proposed instruction No. 12, which was as follows:

If you find from the circumstances and course of conduct, that there was an implied agreement between the defendant and the payee, that the payee agreed to accept his checks with knowledge that they might not be good, and, if that condition existed, to extend credit until such time as they were paid on redeposit, then you must find the defendant not guilty.

In taking exception to the refusal of the court to give this instruction, the only argument made by the appellant was, "I feel that is a proper statement of the law."

Such argument is not adequate to apprise the trial judge of the points of law involved. *State v. Lyskoski,* 47 Wn.2d 102, 287 P.2d 114 (1955). Where an attorney objecting to the refusal of a proposed instruction fails to advise the court of any particular point of law involved, those points will not be considered on appeal. *Colonial Inv. Co. v. Kuhnhausen,* 73 Wn.2d 861, 440 P.2d 975 (1968).[1]

The appellant urges that he was denied his right to have the jury instructed on this theory of the case, but the trial court was not advised that this was the basis for the appellant's exception. Furthermore, as we pointed out in *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968), the defense that a worthless check was accepted with an agreement to hold it and deposit it later can be adequately argued under an instruction that the burden is upon the state to prove beyond a reasonable doubt that the complaining witness was induced to part with personal property in reliance upon the check. Instructions to the same effect were given in this

---

[1] The only authority cited in the brief to support this proposed instruction is *Seaboard Oil Co. v. Cunningham,* 51 F.2d 321 (5th Cir. 1931), a malicious prosecution case in which there was evidence that the checks in question would have been paid had they been redeposited, as well as evidence that the party to whom they were given had agreed, by conduct, to accept postdated checks and to redeposit checks which were returned marked insufficient funds. There was no comparable evidence in this case.

case, and no contention is made that they were inadequate to inform the jury regarding the prosecution's burden of proof.

The judgment is affirmed.

HUNTER, C. J., FINLEY and NEILL, JJ., and LEAHY, J. Pro Tem., concur.

HUNTER, C. J. (concurring)—I concur in Justice Rosellini's opinion and have the following observations as to the admissibility of the two worthless checks issued by the appellant 1 and 2 weeks after issuance of the checks involved in this case.

The record is replete with evidence to show that the checks were issued under similar motivations and conditions. The checks were issued with the same knowledge that no deposit would be available for payment on their presentment, as in the case of the issuance of the prior checks with which the appellant was charged. The Small Business Administration's priority to draw upon funds when deposited to the appellant's account was continuing and in existence at the time the subsequent checks were issued. As in the case of issuance of the checks with which the appellant was charged, no money would have been available for payment of the subsequent checks had a deposit been made.

The appellant argues that except for the garnishment by the state over $3,000 would have been available for payment of the checks. This does not follow. Had the funds been deposited they would have been subject to immediate withdrawal by the SBA, as in the case of the deposit for the prior checks.

The appellant argues that the exception to the rule permitting the introduction of similar acts to show intent, plan, knowledge, or scheme applies only to prior acts. To the contrary, the general rule permits the introduction of subsequent similar acts for such purposes. This rule has been followed in this state. In *State v. Brown,* 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948), a prosecution for

murder and robbery, it was held that a subsequent robbery, "committed by the same parties, employing the same means, operating in the same vicinity, on the same day within a couple of hours' time" of the principal charge, was admissible to disclose the *modus operandi* and the appellant's intent in the crime charged. In *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962), a prosecution for indecent liberties, it was held not to be error to admit evidence of immoral conduct involving the defendant and the prosecuting witness which occurred several hours subsequent to the crime charged. It was there said, at 26:

> The testimony of the prosecuting witness, to which defendant now objects, is relevant, for it tends to establish a common scheme or plan. Being a continuation of the crime charged, we cannot say that the "minute peg of relevancy will be entirely obscured by the dirty linen hung upon it."
>
> Our conclusion that the evidence of a subsequent crime was admissible, under the facts of this case, is supported by the decisions of this court in *State v. Crowder,* 119 Wash. 450, 205 Pac. 850 (1922), and *State v. Brown,* 31 Wn. (2d) 475, 197 P. (2d) 590, 202 P. (2d) 461 (1948).

In cases involving the element of fraud, subsequent similar acts and offenses have also been admitted. Thus, other worthless checks drawn on the same day were allowed in *State v. Jeane,* 35 Wn.2d 423, 213 P.2d 633 (1950). Likewise, two checks found in the defendant's pocket at about the same time as the forgery charged were held admissible in *State v. Russell,* 70 Wn.2d 552, 424 P.2d 639 (1967). In another forgery prosecution, *State v. Harrison,* 72 Wn.2d 737, 435 P.2d 547 (1967), evidence of two other checks forged at about the same time and place were held admissible. In *State v. Hujus,* 73 Wn.2d 240, 438 P.2d 212 (1968), we affirmed a conviction on eight counts of larceny by false representation and held that it was proper to admit evidence of other similar transactions occurring over a 7-month period subsequent to the crimes with which the defendant was charged.

The trial court did not err in admitting the worthless

checks issued subsequent to the checks involved in this case. I agree with the majority's disposition of this case and the reasoning stated in the opinion.

NEILL, J. concurs with HUNTER, C. J.

March 25, 1970. Petition for rehearing denied.