[No. 3594–2. Division Two. April 16, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v.
JAMES KANE, *Appellant.*

*Robert Olson,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Mark Sidran, Deputy,* for respondent.

REED, A.C.J.—James Kane appeals from his conviction of violating RCW 9A.56.060(1) and (2)—unlawful issuance of a bank check.[1] We affirm.

On May 18, 1976, defendant, owner of a small television repair shop, went shopping at the Nordstrom store in the Southcenter Shopping Mall, near Seattle. He selected $294.15 worth of merchandise. When the sales clerk would not permit him to charge the goods, defendant went to his truck to get a check. He wrote a check for $294.15 on his Tukwila Branch, Peoples National Bank (Peoples) account and left the store. The account had been closed for approximately 5 1/2 months at the time of this transaction.

The next day defendant called Nordstrom and told the credit office that he had mistakenly written the check on his closed account. On May 21, he returned to the store and tendered a check drawn on an account maintained at the Old National Bank (ONB). Susan Okino, the store's office manager, called ONB to find out whether the check was good and was informed the account existed but contained insufficient funds to cover it. According to Okino, defendant left the store while she was making the call, even though he had been asked to wait.

Defendant testified that after he left Nordstrom, he immediately went to ONB to deposit $1,000. He also stated he was told by a bank official the account had been closed because he was overdrawn; consequently, he did not make the deposit. Wanda Leavitt of ONB stated she could recall

---

[1]RCW 9A.56.060(1) and (2) provide:

"Unlawful issuance of checks or drafts. (1) Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or other depository, to meet said check or draft, in full upon its presentation, shall be guilty of unlawful issuance of bank check. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or other depository for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud.

"(2) Unlawful issuance of a bank check in an amount greater than two hundred and fifty dollars is a class C felony."

no such visit. According to Leavitt the ONB account had been opened on May 17, 1975, with an initial deposit of $172; that between May 17 and 20 the bank paid checks totaling $150, leaving a total of $22.

Defendant was arrested and charged in January of 1977 with unlawful issuance of the May 18, 1975, check on the Peoples closed account. He maintained, however, that there had been two checkbooks in his truck on May 18, and that he had mistakenly taken a check from the then open ONB account. In other words, he argued that he was not guilty because he had never intended to defraud Nordstrom.

In an attempt to refute defendant's claim, the prosecutor, over defendant's strenuous objection, introduced evidence of other bad checks that had been written by defendant. The evidence demonstrated that (1) defendant had written 18 NSF checks on the Peoples account *before* the account had been closed; (2) defendant had written 28 checks on the Peoples account *after* it had been closed; and (3) he had written 4 NSF checks on the ONB account during the period of May 21 and 26 which would have overdrawn the account by approximately $700. The prosecutor also introduced evidence which showed that the Peoples checkbook was in the form of a business ledger with three checks to a page, while the ONB checks were kept in a conventional, personal account single–check booklet.

After the jury returned a verdict of guilty, defendant initiated this appeal. On appeal, he contends that the trial court committed reversible error by admitting evidence of the other bad checks. As his first argument, defendant urges that the evidence should not have been admitted because it amounted to proof of uncharged crimes. *See State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). We disagree.

It is well established that evidence of other criminal acts is generally not admissible. The rule is not, however, absolute. Such evidence is admissible to show (1) motive or intent; (2) absence of accident or mistake; (3) common scheme or plan; (4) identity; or (5) if it is relevant to any

other material issue before the jury. *State v. Wells*, 17 Wn. App. 146, 561 P.2d 697 (1977). In the instant case defendant's closed account and NSF checks were clearly relevant to negating his claim he "accidentally" grabbed the wrong checkbook. In addition, the bad checks were also probative in that they tended to prove defendant knew his checks were worthless, would not be paid upon presentment, and thus his intent to defraud. We find the trial court did not abuse its discretion by admitting this evidence. *State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969); *State v. Jeane*, 35 Wn.2d 423, 213 P.2d 633 (1950); *State v. Battle*, 16 Wn. App. 66, 553 P.2d 1367 (1976).[2]

Defendant also argues that the trial court erred in admitting evidence of other transactions on the Peoples account because a proper foundation for such evidence had not been laid. We disagree. Frank Buty, a branch officer of the bank, was called by the State and was asked a few preliminary questions concerning his role in bank operations. The prosecutor then attempted to introduce "exhibit 3," which contained a summary of the activity in defendant's account. After defendant challenged the admission of the exhibit, the proceedings continued out of presence of the jury. At that time, Buty testified that all information concerning closed accounts was stored in computers and that he had prepared exhibit 3 in order to avoid bringing somewhat bulky computer printouts to court. He also stated the computer records were kept "in the ordinary course of business" and averred that he was the custodian of the records. The trial court did not permit the jury to see the exhibit, but did allow Buty to testify concerning its contents.

 Initially we point out that so long as the underlying records could have been admitted, it is not error to admit

---

[2]Defendant also argues that the trial court erred in admitting this evidence because most of the checks on the closed Peoples account were written after the date of the charged offense. We find no merit in this contention. *State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969).

either a compilation of such records or testimony concerning such records, if the proponent establishes that the original records are too voluminous for easy court use. In addition, the proponent must make the original records available for examination by the opposing party. *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979); *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965); *State v. Smith,* 16 Wn. App. 425, 558 P.2d 265 (1976); 5 Wash. Prac. § 98 (1965); S. Gard, *Jones on Evidence* § 7:30 (6th ed. 1972). Defendant's assignment of error in this court properly focuses on the question of the admissibility of the computer records themselves.

▪ Computer–generated evidence is generally hearsay and can only be admitted if it comes within one of the established exceptions to the hearsay rule. Roberts, *A Practitioner's Primer on Computer–Generated Evidence,* 41 U. Chi. L. Rev. 254 (1973–74). In this case, the evidence would be admissible as a business record, provided the proper foundation had been laid. *Seattle v. Heath,* 10 Wn. App. 949, 520 P.2d 1392 (1974); *State v. Smith, supra.* RCW 5.45.020 sets forth the requirements for the admission of business records. It provides:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The court in *Heath,* relying on *King v. State,* 222 So. 2d 393 (Miss. 1969), established a three–prong test for the admissibility of computer–generated evidence: (1) a showing the electronic computing equipment is standard; (2) proof that the entries were made at or near the time of the happening of the event and were made in the regular course of business; and (3) a general requirement that the foundation testimony be sufficient to convince the trial court

that such evidence is trustworthy. These requirements are quite similar to those of RCW 5.45.020, with the additional requirement that the proponent prove that the computer equipment is standard. We do not believe that this addition is indispensable where no question is raised concerning the reliability of the computer–generated evidence; we are satisfied that a trial judge who is convinced the specific provisions of RCW 5.45.020 have been complied with may admit the evidence without requiring the proponent to supply technical information concerning the type of computer (or program) that was used. *See United States v. Jones*, 554 F.2d 251 (5th Cir. 1977). *See also Merrick v. United States Rubber Co.*, 7 Ariz. App. 433, 440 P.2d 314 (1968); *Bobbie Brooks, Inc. v. Hyatt*, 195 Neb. 596, 239 N.W.2d 782 (1976); *Transport Indem. Co. v. Seib*, 178 Neb. 253, 132 N.W.2d 871, 11 A.L.R.3d 1368 (1965).

In this case, there was no error in admitting the evidence without requiring that technical information be supplied. Certainly when the computer–generated evidence is provided by a well established national banking institution, maintaining numerous branches in the state, it is reasonable for a court to assume that the "electronic–computer" equipment is reliable. Although perhaps an even stronger foundation could have been laid if the prosecutor had provided more information concerning the type of data that was fed into the computer, a trial court's decision regarding the admission of business records will only be reversed for manifest abuse of discretion. *State v. Kreck*, 86 Wn.2d 112, 542 P.2d 782 (1975). We find that the decision to admit this evidence demonstrates no such abuse.

Judgment affirmed.

PETRIE and SOULE, JJ., concur.