# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| BARRY E. NILSEN, | ) | No. 74133-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUALITY LOAN SERVICING | ) | |
| CORPORATION OF WASHINGTON, | ) | |
| a Washington Corporation; MCCARTHY | ) | |
| HOLTHUS, LLP, a California Limited | ) | |
| Liability Partnership; NATIONSTAR | ) | |
| MORTGAGE LLC, a National Mortgage | ) | |
| Services Company; DEUTSCHE BANK | ) | |
| AS TRUSTEE FOR RALI SERIES | ) | |
| 2007-Q02, a Foreign Trust Company; | ) | UNPUBLISHED OPINION |
| RALI SERIES 2007-Q02, a Foreign | ) | |
| Trust; JOHN DOES 1-99, | ) | FILED: March 28, 2016 |
| | ) | |
| Respondents. | ) | |

VERELLEN, A.C.J. — Barry Nilsen appeals the summary judgment orders

dismissing his claims against Nationstar Mortgage LLC, Deutsche Bank as trustee for

RALI Series 2007-Q02, Quality Loan Servicing Corporation of Washington, and

McCarthy Holthus, LLP. He challenges the admissibility of the declaration of

Nationstar's litigation resolution analyst Fay Janati. But a summary of voluminous

business records is admissible over a hearsay objection. We conclude that the trial

court did not err in admitting Janati's declaration.

As to his Consumer Protection Act (CPA)[1] claim, Nilsen fails to identify any genuine issue of material fact as to an unfair or deceptive act. Summary judgment was proper.

We affirm.

## FACTS

Barry Nilsen borrowed $187,300 from Paul Financial, LLC in December 2006. He executed a promissory note secured by a deed of trust. The note permits acceleration of the debt upon default. The deed of trust identified Mortgage Electronic Systems, Inc. (MERS) as the beneficiary solely as a nominee for Paul Financial and its successors and assigns. The deed of trust specified that the note could be transferred without prior notice to Nilsen, and that such a transfer could result in a change of the entity servicing the loan.

After Paul Financial indorsed the note in blank, a securitization trust acquired the loan (RALI Series 2007-Q02 Trust, Deutsche Bank as trustee). Aurora Loan Services, LLC serviced the loan and maintained possession of the original note and deed of trust from April 2008 until June 30, 2012.

Nilsen defaulted in February 2010.

On October 22, 2010, Aurora Loan appointed Quality Loan as successor trustee under the deed of trust.

On July 15, 2012, Nationstar gave Nilsen notice that the servicing rights to his loan had been "assigned, sold or transferred" from Aurora Loan to its successor,

---

[1] Ch. 19.86 RCW.

Nationstar, effective July 1, 2012.[2] Nationstar has continuously possessed the note and deed of trust since July 1, 2012.

On October 5, 2012, Aurora Loan executed and recorded an assignment conveying its interest under the deed of trust to Nationstar.

On July 5, 2013, Nationstar provided Quality Loan with a beneficiary declaration identifying Nationstar as the "actual holder" of the note.[3]

On October 21, 2013, Quality Loan issued a notice of default to Nilsen. The notice of default identified Nationstar as the "current owner" of the note secured by the deed of trust.[4]

On November 2, 2013, Nilsen sent a letter to Quality Loan to "put your firm on Actual Notice that I contest the validity of Nationstar Mortgage, LLC, as being the current Beneficiary of the above loan, an allegation your firm has claimed in the Notice of Default dated 10/21/2013."[5] It appears Quality Loan did not respond to his letter.

On November 27, 2013, Quality Loan issued a notice of trustee's sale set for March 28, 2014.

On December 6, 2013, Nilsen sent a letter to Nationstar seeking information about his loan. On December 11, 2013, Nationstar responded to Nilsen's letter and identified itself as the current servicer of the loan and Deutsche Bank as the loan's owner. The letter also stated:

---

[2] Clerk's Papers (CP) at 74.

[3] CP at 237.

[4] CP at 251.

[5] CP at 254.

Please note that Nationstar is the servicer of the loan; and therefore, will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications

- Payment posting

- Validation of the debt

- Foreclosure proceedings

- Payment adjustments

As such, please direct any correspondence related to these matters to Nationstar.[6]

Quality Loan subsequently postponed the sale, and the sale never occurred.

In April 2014, Nilsen filed suit against Nationstar, Deutsche Bank, Quality Loan, and McCarthy Holthus alleging violation of the CPA, breach of contract, and breach of good faith duty.[7] Nationstar, Deutsche Bank, Quality Loan, and McCarthy Holthus filed motions for summary judgment to dismiss Nilsen's claims. The trial court granted summary judgment.

Nilsen appeals.

## ANALYSIS

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[8] We view the facts and all reasonable inferences in the light most

---

[6] CP at 247.

[7] Nilsen also alleged violations of the deeds of trust act, chapter 61.24 RCW, and the Criminal Profiteering Act, chapter 9A.82 RCW, as well as negligence and civil conspiracy, but later abandoned those claims.

[8] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

favorable to the nonmoving party.[9] Summary judgment is proper if there are no genuine issues of material fact.[10] A material fact is one that affects the outcome of the litigation.[11]

A defendant moving for summary judgment "has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent evidence to support an essential element of [his] case."[12] If the defendant meets this initial showing, then the inquiry shifts to the plaintiff to set forth evidence to support his case.[13] The evidence set forth must be specific and detailed.[14] The responding plaintiff may not rely on conclusory statements, mere allegations, or argumentative assertions.[15] If the plaintiff fails to establish the existence of an essential element that he bears the burden of proving at trial, then summary judgment is warranted.[16]

*Janati Declaration*

Nilsen challenges the admissibility of Janati's declaration. He argues Janati "did not have personal knowledge of the facts" in Nationstar's records, and the information

---

[9] Fulton v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[10] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

[11] Janaszak v. State, 173 Wn. App. 703, 711, 297 P.3d 723 (2013).

[12] Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001).

[13] Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989).

[14] Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

[15] CR 56(e); Vacova Co. v. Farrell, 62 Wn. App. 386, 395, 814 P.2d 255 (1991).

[16] Young, 112 Wn.2d at 225.

offered by her "is hearsay within hearsay because the information comes from documents, which are themselves hearsay."[17] We disagree.

We review evidentiary rulings on summary judgment de novo based on the record and objections made to the trial court.[18]

A declaration in support of summary judgment must be made on personal knowledge, set forth admissible evidentiary facts, and affirmatively show that the declarant is competent to testify to the matters stated.[19] Statements in a declaration based on a review of business records satisfy the personal knowledge requirement if the declaration satisfies the business records statute, RCW 5.45.020.[20] A business record is admissible as competent evidence

> if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.[21]

Janati's declaration provides adequate foundation testimony for the introduction of Nationstar's business records. She declared she was an employee of Nationstar, had personal knowledge of Nationstar's "standard systems" for recording information relating to customer payments, principal, interest, fees, and other charges, and that

---

[17] Appellant's Br. at 13.

[18] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); see Zink v. City of Mesa, 140 Wn. App. 328, 347, 166 P.3d 738 (2007).

[19] CR 56(e); Doe v. Puget Sound Blood Ctr., 117 Wn.2d 127, 141, 331 P.3d 40 (2014); McKee v. Am. Home Prods., Corp., 113 Wn.2d 701, 706, 782 P.2d 1045 (1989).

[20] Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010).

[21] RCW 5.45.020.

Nationstar's business records included records "generated prior to the assignment of servicing rights to Nationstar."[22]

The objections to the admissibility of Janati's declaration expressly raised at summary judgment were that it was "hearsay within hearsay, she's trying to testify to a business record that's not present," and that "[a]ll the business records aren't attached."[23] But true and correct copies of Nilsen's note and deed of trust were attached to Janati's declaration. These records are admissible as business records supported by adequate foundation testimony. Nilsen cites no compelling authority that the original blue ink note and deed of trust, rather than copies, must be attached to the declaration or be present to be admissible as business records.[24]

Janati's declaration provides a summary of Nilsen's payments in the form of the current arrears and current principal balance on the loan. Nilsen acknowledges Nationstar was permitted to summarize these business records under ER 1006, but claims ER 1006 was not satisfied because these voluminous records had not been made available. But this objection was never made in the trial court. Nilsen's objection that Nationstar failed to attach all the business records relied upon in the declaration is

---

[22] CP at 155. Because Janati's declaration was made on personal knowledge, Nilsen's argument that the declaration violates the best evidence rule fails. The best evidence rule applies where the matter to be proved is not within the personal knowledge of a witness and therefore can only be proved by resort to corporate records. State v. Mahmood, 45 Wn. App. 200, 203, 724 P.2d 1021 (1986) (explaining "to the extent that a foundation has been laid that a witness has personal knowledge of a corporate affair, he or she can testify to that affair").

[23] Report of Proceedings (Oct. 10, 2014) at 17.

[24] The footnote Nilsen referred to at oral argument does not support his proposition. See Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 828 n.4, 355 P.3d 1100 (2015) (discussing whether possession of a copy of a note is adequate for purposes of determining entitlement to commence nonjudicial foreclosure).

distinct from an objection that voluminous records had not been made available for inspection as required by ER 1006.[25]

Janati's declaration also provides a short history of the prior servicing of Nilsen's loan and its transfer to Nationstar. First, the documents Nationstar received in acquiring the servicing rights to Nilsen's loan are valid business records of Nationstar.[26] Second, most of these details are not material to questions presented on summary judgment, such as the existence of the note and deed of trust, the balance owing and amount in default under the note, Nationstar's status as holder of the note, and whether a valid beneficiary declaration was issued. Third, the prior servicer history is consistent with the documents offered by Nilsen on summary judgment regarding the transfer of the loan servicing to Nationstar. Finally, the historical summary of voluminous business records of prior servicing is admissible under ER 1006, and any failure to make those voluminous records available was not raised as an objection in the trial court.[27]

We note that this court's recent decision in Podbielancik v. LPP Mortgage Ltd. is not applicable.[28] Podbielancik involved different forms of declarations on different topics at issue in that case.[29] The cases relied upon in Podbielancik stand for the general

---

[25] See Zink, 140 Wn. App. at 347 (recognizing that an objection to the failure to make voluminous records available for purposes of ER 1006 is distinct from a hearsay objection).

[26] See Discover Bank, 154 Wn. App. at 726 (explaining that a collection agency's business records included documents provided by the original lender).

[27] See State v. Kane, 23 Wn. App. 107, 110, 594 P.2d 1357 (1979) (explaining that "so long as the underlying records could have been admitted, it is not error to admit either a compilation of such records or testimony concerning such records, if the proponent establishes that the original records are too voluminous for easy court use")

[28] ___ Wn. App. ___, 362 P.3d 1287 (2015).

[29] Id. at 1289-90.

proposition that an attorney cannot oppose summary judgment by filing his or her own declaration describing various documents the attorney has read, and that if a person has personal knowledge of information, such as the contents of a videotape, they may testify in a declaration by describing the contents of the video based upon his or her personal knowledge of having viewed the video.[30]

On this record and the objections made at summary judgment, we do not need to resolve any other nuances of The Uniform Business Records as Evidence Act[31] or the foundation required to satisfy personal knowledge. Because Janati's declaration established the foundation for the admissibility of the business records material to this nonjudicial foreclosure, it was properly admitted.

### Violations of the CPA

The deeds of trust act (DTA)[32] does not create an independent cause of action for monetary damages based on alleged violations of its provisions where, as here, no foreclosure has been completed.[33] But under appropriate factual circumstances, violations of the DTA may be actionable under the CPA even though no foreclosure sale has been completed.[34]

To prevail on an action for damages under the CPA, the plaintiff must establish "(1) an unfair or deceptive act, (2) in trade or commerce, (3) that affects the public

---

[30] Id. at 1290.

[31] RCW 5.45.020.

[32] Ch. 61.24 RCW.

[33] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 417, 430, 334 P.3d 529 (2014).

[34] Id.

9

interest, (4) injury to plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered."[35] The failure to establish even one of these elements is fatal to a CPA claim.[36] Whether a particular action gives rise to a CPA violation is reviewable as a question of law.[37]

Nilsen offers several arguments why his CPA claim should have survived summary judgment, but his core premise is that Nationstar lacked authority to initiate foreclosure because it was not the owner of his note. As acknowledged at oral argument, recent case law rejects that premise; Washington law authorizes the "division of note ownership from note enforcement."[38]

RCW 61.24.005(2) broadly defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." The Uniform Commercial Code (UCC) guides our interpretation of the DTA's terms.[39] The UCC defines a "holder" as the person in possession of the note that is payable either to bearer or to an identified person who is the person in possession.[40] The definition of

---

[35] Trujillo, 183 Wn.2d at 834-35; Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[36] Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

[37] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

[38] Brown v. Washington State Dep't of Commerce, 184 Wn.2d 509, 523, 359 P.3d 771 (2015).

[39] Title 62A RCW; Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 104, 285 P.3d 34 (2012).

[40] RCW 62A.3-201. If indorsed in blank, the note is payable to bearer. RCW 62A.3-205(b).

"holder" "does not turn on ownership."[41] A holder of a note is entitled to enforce the note, "regardless of ownership."[42] Thus, a loan servicer who holds the note is the beneficiary entitled to enforce the note even if a separate "note owner" is "entitled to the ultimate economic benefit of payments on the note."[43]

Here, the record reflects that since July 1, 2012, Nationstar has continuously possessed Nilsen's note, which Paul Financial indorsed in blank. This gave Nationstar the status of holder. Because Nationstar was the holder of the note, it was the beneficiary with lawful authority under the DTA to initiate foreclosure proceedings. And Nationstar delivered a sworn declaration to this effect to Quality Loan. Nilsen has not contradicted the facts stated in the declaration.[44]

Therefore, we reject Nilsen's asserted unfair or deceptive acts that Nationstar executed a beneficiary declaration without being the beneficiary, that Quality Loan issued a notice of trustee's sale without having proof Nationstar was the owner of the note, and that Nationstar, Quality Loan and Deutsche Bank deceived Nilsen by misrepresenting the owner of his note. Additionally, Nilsen's claim that an unfair or deceptive act or practice is presumed where MERS is involved is not actionable. Nilsen

---

[41] Brown, 184 Wn.2d at 525.

[42] Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 501, 326 P.3d 768 (2014).

[43] Brown, 184 Wn.2d at 523 (quotation marks omitted).

[44] See Trujillo, 181 Wn. App. At 496 ("Absent conflicting evidence, the [beneficiary] declaration should be taken as true.").

11

relies on the mere fact that MERS was listed as the original beneficiary and, under <u>Bain v. Metropolitan Mortgage Group, Inc.</u>, that is not enough.[45]

Nilsen's argument that Quality Loan was not appointed successor trustee by a lawful beneficiary also fails. The record reflects Aurora Loan was the holder of the note when Quality Loan was initially appointed, and Nationstar was the holder of the note when the beneficiary declaration was presented to Quality Loan and the foreclosure notices were issued.

Although the October 21, 2013 notice of default mistakenly stated Nationstar owned the note, the November 27, 2013 notice of trustee's sale correctly indicated Nationstar was the beneficiary. And Nationstar's December 2013 response to Nilsen's letter correctly advised him that Nationstar was his loan's servicer and should be contacted to discuss any questions about the foreclosure.

Nilsen contends Quality Loan breached its duty of good faith to investigate the confusing information presented to him about who owned his note. In support of his argument, Nilsen cites a July 9, 2014 letter from Ocwen Financial Corporation in response to his inquiry about who owned his note. The letter addresses a collateral question of the impact of a Chapter 11 bankruptcy of GMAC financing and makes a reference to "the above-referenced purged account."[46] But this passing reference does not support a reasonable inference that Deutsche Bank no longer owned the note. And as discussed above, ownership is not material because the holder of the note indorsed

---

[45] <u>Bain</u>, 175 Wn.2d at 120 (explaining that "the mere fact MERS is listed on the deed of trust as beneficiary is not itself an actionable injury").

[46] CP at 283.

in blank was authorized to initiate the foreclosure.[47] Further, as advised by Nationstar, Nilsen was to contact Nationstar to address any questions about the foreclosure and any refinancing of his loan.

Nilsen contends there are genuine issues of material fact whether Quality Loan satisfied its statutory duty to maintain a physical address staffed by individuals available for service of process. We disagree.

Under RCW 61.24.030(6), a trustee's sale requires

[t]hat prior to the date of the notice of trustee's sale and continuing thereafter through the date of the trustee's sale, the trustee must maintain a street address in this state where personal service of process may be made, and the trustee must maintain a physical presence and have telephone service at such address.

When Quality Loan issued the notice of trustee's sale in November 2013, it identified its physical address in Poulsbo. Quality Loan "had telephone service, as well as various employees" at this address.[48] Effective January 1, 2014, Quality Loan moved offices to Seattle. Quality Loan issued a notice of trustee address change advising Nilsen it had moved from its previous location in Poulsbo to its Seattle address. The record also reflects the Seattle office "has at all times had telephone service, as well as at least one employee present."[49]

And even presuming an inference that there were periods of time when no one was accessible to receive service of process at the Seattle office, any such act is actionable by Nilsen only if the act caused him damages. There are no allegations that he unsuccessfully attempted to serve or otherwise contact a person at either Quality

---

[47] Trujillo, 181 Wn. App. at 501.

[48] CP at 236.

[49] CP at 236.

13

Loan physical address. Vague and general assertions that he was frustrated in his attempts to communicate with Quality Loan are insufficient to prove Quality Loan violated its duty under RCW 61.24.030(6).

As to Nilsen's other alleged unfair or deceptive acts, Nilsen also fails to establish any damages causally linked to such alleged acts. Merely spending time trying to investigate and acquire information from Quality Loan, Nationstar, and Deutsche Bank are insufficient for a CPA claim.[50]

### McCarthy Holthus

Lastly, Nilsen contends McCarthy Holthus "undertook the role of trustee and therefore owes Nilsen the same duty of good faith owed by Quality."[51] But he specifically relies on Klem v. Washington Mutual Bank[52] to argue McCarthy Holthus owed him a "fiduciary" duty of good faith.[53] No such fiduciary duty exists.[54] Moreover, Nilsen failed to raise this argument in his opening brief. "An issue raised and argued for

---

[50] See Bakhchinyan v. Countrywide Bank, N.A., 2014 WL 1273810 at *6 (W.D. Wash. Mar. 27, 2014) ("[E]ven assuming that Plaintiffs accrued those expenses in an attempt to 'dispel uncertainty' about the debt, Plaintiffs have not put forward any explanation for why they need to clarify the identity of the beneficiary. . . . Nor do they describe any future actions that they were unable to take without knowledge of the identity of the beneficiary.").

[51] Reply Br. at 24 (footnote omitted).

[52] 176 Wn.2d 771, 295 P.3d 1179 (2013).

[53] Reply Br. at 24.

[54] See Bain, 175 Wn.2d at 93, n.4 (explaining that in 2008, the legislature amended the DTA "to provide that trustees did not have a fiduciary duty, only the duty of good faith").

the first time in a reply brief is too late to warrant consideration."[55] Accordingly, we reject his argument.

We affirm.

WE CONCUR:

---

[55] <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).